346 So.2d 888 (1977)
Philip CHEATUM
v.
The WACKENHUT CORPORATION et al.
No. 8307.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
*889 Charbonnet & Charbonnet, Wayne E. Garrett, New Orleans, for plaintiff-appellant.
James H. Minge, New Orleans, for defendants-appellees.
Before LEMMON, STOULIG and BEER, JJ.
BEER, Judge.
This is a Workmen's Compensation Act claim by appellant, Philip Cheatum, against his employer, Wackenhut Corporation, and its insurer, claiming total and permanent disability resulting from back injuries sustained in a fall occasioned in the course and scope of his employment on October 9, 1974. The workmen's compensation insurer of Wackenhut, Home Insurance Company, paid compensation in the amount of $65 per week for a 13-week period after the accident. Judgment was rendered, after trial on the merits, holding that Cheatum was injured on October 9, 1974, during the scope of his employment with Wackenhut, and that the resultant disability continued for a period of 13 weeks. Cheatum appeals.
The record discloses that Cheatum has a history of alleged injuries resulting in claims for recovery of damages, including various instances of back injury.
No medical testimony was adduced at trial. However, the medical records and/or depositions of Drs. Rufus H. Alldredge, Richard W. Levy, John C. Thorn, T. S. Whitecloud, III, G. C. Battalora, Carlos Pisarello and Joseph J. Frensilli were introduced. They reflect the following chronology of events and resume of medical opinions as to Cheatum's situation:
Dr. Levy, a neurologist, first examined Cheatum on June 7, 1968, upon Dr. J. T. Nix's recommendation, relative to a February 25, 1968 automobile accident. At that time, Dr. Levy was of the opinion that Cheatum did not have a neurological disability attributable to the accident.
On June 28, 1974, Dr. Frensilli, an orthopaedic surgeon, examined Cheatum at the Westside Orthopaedic Clinic and was of the opinion that Cheatum probably sustained a lumbar-cervical sprain as a result of a June 10, 1974 accident.
Dr. Thorn, whose consultant practice is mostly limited to obstetrics and gynecology, noted in a handwritten report dated July 1, 1974, that Cheatum had made complaints of severe pain in the cervical, mid-thoracic, and lumbosacral regions along the spine. Dr. Thorn further observed: "Ataxia has developed. The patient (Cheatum) may require a myelogram to rule out the diagnosis of a ruptured disc." Numbness in Cheatum's feet suggested that Cheatum possibly suffered a ruptured disc. Dr. Thorn made at least two home visits to see Cheatum because of his complaints of pains communicated over the telephone.
Dr. Battalora saw Cheatum on July 18, 1974, relative to his complaints referable to the head, neck, left arm, low back and legs. After reviewing x-ray studies of the cervical and lumbosacral spine made on July 8, 1974, at West Jefferson Hospital, Dr. Battalora *890 concluded that Cheatum suffered from injuries involving the neck, back and left shoulder girdle. Conservative treatment was recommended.
Following his course and scope fall on October 9, 1974, Cheatum was examined by Dr. Alldredge, an orthopaedic surgeon, on October 11, 1974, at the request of Wackenhut Corporation. Dr. Alldredge related Cheatum's account of the October 9, 1974 fall in his report and opined that Cheatum had sustained a slight lumbosacral strain. On October 15, 1975, Dr. Alldredge again examined Cheatum, noting his complaints of neck, arm, back and leg pain but concluded that there was no objective explanation for the symptoms.
Dr. Pisarello, a neurosurgeon, examined Cheatum once, on December 2, 1974, finding no objective evidence of a herniated lumbar or cervical disc. Dr. Pisarello observed that when a lumbar disc is ruptured traumatically, there is an immediate and unequivocal pain manifestation, particularly so if a 300-pound person falls or jumps, causing injury. If a herniated lumbar disc first manifested itself in November of 1975, Dr. Pisarello opined that it was unlikely that it resulted from an October 9, 1974 fall.
On July 15, 1975, Cheatum was examined again by Dr. Levy, who referred him to Dr. William A. Martin for nerve conduction velocity studies. Thereafter, Cheatum was admitted in Touro Infirmary on November 4, 1975, for further studies and a lumbar myelogram. Because of alleged allergies and alleged hereditarily adverse reaction to iodine, Cheatum opted not have the myelogram performed.
In a report dated November 24, 1975, Dr. Levy expressed the view that Cheatum suffered from a ruptured intervertebral disc at the L5-S1 level on the right side. However, a laminectomy was not recommended at that time due to Cheatum's obesity. Dr. Levy referred Cheatum to a gastroenterologist, Dr. Hyman, for consultation concerning weight loss.
Cheatum was re-examined on March 8, 1976 (prior to being involved in an automobile accident on that same day), by Dr. Levy, who then was of the view that: "There is no evidence of spinal cord, nerve root, or peripheral nerve injury or disease * * * From the clinical standpoint, this man has improved in spite of the fact that he states that his pain is more intense now than it was previously. I do not recommend any further neurological diagnostic studies at present, and no neurosurgery is indicated."
Based upon an examination of October 27, 1975, Dr. Whitecloud, an orthopaedic surgeon, opined that Cheatum was suffering from a herniated lumbar disc and possibly a herniation of a cervical disc. Nevertheless, due to Cheatum's obesity, surgery would be untimely and too dangerous to undertake. Cheatum was again seen by Dr. Whitecloud on December 12, 1975, February 10, 1976 and in March of 1976. After the last visit, Dr. Whitecloud concluded that Cheatum was disabled and that such disability "more than likely" resulted from the fall in October of 1974. This conclusion was grounded upon the history of events given by Cheatum.
Able counsel for plaintiff appropriately cites Freeman v. Standard Materials, Inc., 246 So.2d 258 (La.App. 1st Cir., 1971) writs ref. 258 La. 910, 248 So.2d 334, for the proposition that when only depositions and medical reports are submitted for the trial judge's consideration, the trial judge is not necessarily in a better position to evaluate the credibility of these witnesses than are we. However, here, the trial judge had the opportunity to hear and observe the plaintiff, Cheatum, and thus to make his own credibility determination with respect to those representations which Cheatum made to the various physicians regarding the history of his alleged disability. In the context of this litigation, the credibility of the history given by Cheatum to the various physicians becomes as important as the medical opinions basedin partthereupon.
There is much room for doubt as to whether or not, even now, Cheatum does, in fact, suffer from a ruptured intervertebral *891 disc and, obviously, then, even greater doubt as to whether his disability (if, indeed, it exists at all) is properly attributable to the accident of October 9, 1974. Thus, there is ample basis for support of the trial court's factual determinations which form the basis for its judgment. We find no manifest error on the part of the trial court, nor, for that matter, any basis upon which we should consider substituting our conclusions (even if they be not identical) for those reached by the trial court.
Accordingly, the judgment of the 29th Judicial District Court for the Parish of St. Charles is affirmed, at appellant's cost.
AFFIRMED.