923 So.2d 111 (2005)
Walter MENESES
v.
IFCO SYSTEMS, INC. and Liberty Mutual Insurance Company.
No. 2004 CA 1686.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*113 Miguel A. Elias, Kenner, Counsel for Claimant/Appellant Walter Meneses.
Philip J. Borne, New Orleans, Counsel for Defendants/Appellees IFCO Systems, Inc. and Liberty Mutual Insurance Company.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
The claimant-appellant, Walter Meneses, appeals an adverse judgment of the Office of Workers' Compensation Administration, District 6, dismissing his claim for workers' compensation benefits instituted against the defendants-appellees, IFCO Systems, Inc. (Mr. Meneses's employer), and its workers' compensation insurer, Liberty Mutual Insurance Company. The defendants-appellees have answered the appeal, seeking restitution of medical benefits pursuant to La. R.S. 23:1208(D). For the following reasons, we affirm the judgment and dismiss the answer to the appeal.

FACTS AND PROCEDURAL HISTORY
The claimant, Walter Meneses, is a native of Costa Rica, and was employed by IFCO Systems, Inc. (IFCO) as a mechanic responsible for maintaining heavy equipment. He claims that he suffered a work-related injury on Saturday, April 27, 2002, as the result of a fall from a forklift to the ground. The claimed accident was not witnessed. In his disputed claim for compensation, filed on March 17, 2003, and in subsequent testimony, he explained that he had changed hydraulic fluid lines on the forklift and slipped on the steps of the forklift as he was getting down. He did not believe he had sustained a serious injury at the time, but reported the accident to a foreman, Oscar Delgado, who resided near the business premises and was the only supervisory employee present that day. Mr. Meneses further testified that his low back pain increased through the following Monday, and he reported the claimed accident and injury to Waylon Givens, IFCO's assistant general manager, on either Sunday or Monday.
In his trial testimony, Mr. Delgado confirmed Mr. Meneses's initial verbal report of the accident, and stated that he instructed Mr. Meneses to report the accident later to either Mr. Givens or Chad Montalbano, the general manager. Mr. Givens testified at trial that Mr. Meneses did advise him of the accident on the morning of April 29, 2002, the following Monday. He recalled that Mr. Meneses reported that "he fell off the forklift off of [sic] a ladder" and "hit the ground." He further testified that he instructed IFCO's office manager to retrieve an accident report form to fill out in order for Mr. Meneses to receive treatment at North Oaks Medical Center.
The outpatient records of North Oaks Medical Center for April 29, 2002 document *114 the history that Mr. Meneses "slipped while on stairs & fell backwards, landing on [his right] shoulder & [right] lumbar area." He was evaluated and released with a diagnosis of lumbar spine and right shoulder contusions. He returned on May 6, 2002, reporting that although his shoulder pain had improved, his lumbar spine pain had not. The examining physician diagnosed a lumbar spine strain with a possible disc herniation and recommended an MRI study. An MRI study performed on May 15, 2002 was interpreted as showing a two-millimeter disc protrusion at the L4-L5 level and evidence of a laminotomy with facet joint hypertrophy and bilateral neural foramen stenosis at the L5-S1 level. On May 17, 2002, Mr. Meneses was still complaining of right shoulder and low back pain. The diagnosis that date was that of a right shoulder strain/contusion and a lumbar spine strain.
Mr. Meneses had been treated prior to the claimed accident by Charles R. Genovese, Jr., M.D., an internal medicine specialist. Following the accident, Mr. Meneses again sought treatment from Dr. Genovese, the first occasion being on May 6, 2002. On that occasion, he did not mention either the accident or the presence of any back or shoulder pain. The accident was not reported to Dr. Genovese until the following visit of June 27, 2002. Dr. Genovese testified by deposition that Mr. Meneses had not complained to him of radiating back pain, or sciatica, from April 28, 1997 until the second post-accident visit of June 27, 2002. On July 30, 2002, Dr. Genovese noted that Mr. Meneses complained of increased back pain. His diagnosis at that time was "degenerative joint disease" and "lumbar disc disease," and he prescribed Vicodin for pain. Dr. Genovese continued to see Mr. Meneses intermittently for complaints of back pain, among other unrelated health conditions, through the time of his deposition on November 6, 2003.
Mr. Meneses was also referred by his attorney for evaluation to Dean Moore, M.D., a neurosurgeon, on March 3, 2003. Dr. Moore's diagnostic impression was that of "foraminal stenosis, L5-S1 bilaterally," with the stenosis on the right being "rather severe." In his narrative report, Dr. Moore did not offer any opinion regarding the causative relationship of Mr. Meneses's symptoms and the accident.
Although $1,642.14 in medical expenses were paid on behalf of IFCO for Mr. Meneses's treatment following the reported accident, it paid no weekly compensation benefits.
The evidence at trial documented the fact that Mr. Meneses had a prior history of both low back pain and shoulder arthritis, and in 1987 had undergone a laminotomy to afford space for a nerve at the right L5-S1 level of the lumbar spine. In his deposition, Dr. Genovese testified that Mr. Meneses complained of "a week of severe right back pain with radiation down his right leg" in the spring of 1997. On December 10, 1998, Dr. Genovese telephoned in a prescription for Vicodin for back pain. On April 27, 1999, Mr. Meneses described having "minimal back pain" to Dr. Genovese, but requested a prescription for Vicodin for back pain on April 29, 1999, two days later. On August 1, 2000, Dr. Genovese prescribed Darvocet for pain. A cardiopulmonary rehabilitation record of LSU-Lallie Kemp Medical Center for September 15, 2000, showed that Mr. Meneses stopped his exercise early that day and had complaints of lower back pain. The Darvocet prescription was refilled on October 31, 2000, at which time Dr. Genovese entered a diagnosis of "degenerative joint disease" of both the back and shoulder. On July 31, 2001, Mr. Meneses saw Dr. *115 Genovese, complaining of soreness, probably in his back, and was given a Celestone injection. On November 29, 2001, Dr. Genovese noted that Vicodin was helpful with regard to Mr. Meneses's pain, and that his "right hip" complaint was unchanged.
In his discovery deposition, Mr. Meneses denied having any back problems or treatment for such problems between the time of his 1987 surgery and the accident of April 27, 2002; at trial he testified at one point that he had no low back complaints between 1997 and the accident date. In his report, Dr. Moore also documented that Mr. Meneses denied having any back problems or symptoms from two weeks after the 1987 surgery through the accident date. Finally, at one point in his trial testimony Mr. Meneses admitted that he "probably" needed pain medication before the accident in order to be able to perform his duties with IFCO.
The trial was conducted on March 8, 2004. At the conclusion of the trial, the workers' compensation judge (WCJ) took the matter under advisement pending submission of post-trial memoranda. On March 17, 2004, the WCJ signed a written judgment stating his factual conclusion that because Mr. Meneses "was not forthcoming with respect to his prior medical treatment and complaints to [sic] his spinal region(s)," he "failed to meet his burden of proof ... that an accident occurred with injury while in the course and scope of his employment," and dismissed his claim with prejudice. In response to Mr. Meneses's request for written reasons for judgment, the WCJ issued reasons reciting the existence of contradictory statements of how the accident occurred, but also concluding that based upon the medical evidence, Mr. Meneses's "current medical condition was more likely than not unrelated to any such accident" and that there was no "current objective medical evidence supporting [his] complaints." Mr. Meneses now appeals.

ASSIGNMENTS OF ERROR
In his appeal, Mr. Meneses assigns the following errors on the part of the WCJ:
1. The WCJ was manifestly erroneous in finding that he was not injured by an accident in the course and scope of his employment;
2. The WCJ committed legal error in failing to afford him the benefit of a presumption of causation, and was manifestly erroneous in finding that the accident at issue did not aggravate his pre-existing condition and cause his disability;
3. The WCJ was manifestly erroneous in failing to find that any inconsistencies in his testimony regarding his pre-accident back pain and treatment were not willful misrepresentations, but due to his limited education and facility with the English language; and
4. The WCJ was manifestly erroneous in finding that he was not entitled to benefits because of his failure to answer truthfully to employer's inquiries about prior medical conditions and treatment, under La. R.S. 23:1208.1.
In their sole assignment of error, raised by answer to the claimant's appeal, defendants contend that the WCJ's failure to find that Mr. Meneses committed fraud and violated La. R.S. 23:1208 constitutes manifest error.

THE EMPLOYEE'S CLAIM
In a workers' compensation case, as in other civil cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. Peters v. Harmsen, 03-1296, p. 4 (La.App. 1st Cir.4/2/04), 879 So.2d 157, 160. In order to reverse a factual determination by the trier of fact, the appellate *116 court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
A workers' compensation claimant has the burden of proof to establish that a work-related accident occurred by a preponderance of the evidence. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony should be accepted as true. Id. In Bruno, the Louisiana Supreme Court held that a worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Id. Therefore, if the worker testifies that he suffered an accident, a court must then look to see if the Bruno elements are satisfied. Coats v. American Tel. & Tel. Co., 95-2670, p. 5 (La.10/25/96), 681 So.2d 1243, 1245.
Applying the Bruno standard to the evidence relating to the incident itself, we conclude, as we did in Peters, that the factual questions raised regarding the exact mechanism of the claimant's fall do not raise "serious doubt" as to his version of the incident. The discrepancy between the mechanism described by Mr. Meneses and that he supposedly related to Mr. Givens is relatively trivial, and bears on only minor matters of detail.[1] His testimony concerning his first report of the accident was corroborated by Mr. Delgado. Thus, Mr. Meneses's testimony concerning the occurrence of the accident itself was entitled to great weight, and we conclude the WCJ was clearly wrong in determining that no "accident" occurred.
But a claimant must prove more than only the occurrence of a work-related accident to be entitled to compensation benefits; he must also establish a causal link between the accident and a subsequent disabling condition. Peveto v. WHC Contractors, 630 So.2d 689, 691 (La.1994). Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated or compounded the pre-existing condition to produce compensable disability. Id. He may be aided in meeting the foregoing burden by a presumption of causation if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1985).
As we observed in Peters, a claimant's lack of credibility on factual issues can serve to diminish the veracity of *117 his complaints to a physician. Peters, 03-1296 at p. 8, 879 So.2d at 162; Bass v. Allstate Insurance Company, 32,652, pp. 13-14 (La.App. 2nd Cir.1/26/00), 750 So.2d 460, 467. Thus, in many cases the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history. See Cheatum v. Wackenhut Corporation, 346 So.2d 888, 890 (La.App. 4th Cir.1977). The rule that questions of credibility are for the trier of fact applies also to the evaluation of expert testimony. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990).
Here, the WCJ's credibility determination relating to Mr. Meneses's pre-accident medical history was resolved adversely to him and formed the basis of the WCJ's finding that he had failed to meet his burden of proof of causation. Our review of the record demonstrates the existence of evidence supporting two opposing views on the issue of causation. The testimony and evidence before us likewise do not compel the conclusion that the discrepancies in Mr. Meneses's statements as to his prior treatment were attributable to his lack of proficiency in English. The majority of questions posed to him in his pretrial deposition and at trial relating to prior complaints and treatment were not complicated or confusing in their wording, and thus readily translatable. Likewise, the medical evidence supports the WCJ's conclusion that Mr. Meneses was not entitled to the benefit of the Walton presumption of causation. As the WCJ's finding on the causation issue was expressly based upon his determination of the credibility of the witnesses, it is entitled to great deference, and we must conclude that it is not manifestly erroneous. Peters, 03-1296 at p. 8, 879 So.2d at 162.
The WCJ's judgment in this case was couched in terms of his finding of a failure to prove that an accident occurred with injury, as was the case in Peters, 03-1296 at p. 9, 879 So.2d at 162. Regardless of the trier of fact's reasons, if a judgment is correct in its result, it should be affirmed. Id. Again, there is reasonable support in the record for the WCJ's finding that Mr. Meneses's claimed injury was not proven to be related to the accident. Accordingly, we must affirm the judgment. Mr. Meneses's first three assignments of error have no merit, except with regard to the first assignment's element of the occurrence of the accident itself.
Addressing Mr. Meneses's fourth assignment of error, we agree with defendants' point that the WCJ's judgment was not predicated upon a finding that Mr. Meneses had violated La. R.S. 23:1208.1 by failing to answer questions concerning prior medical history in his employment application and health questionnaire forms truthfully. The defendants never raised that defense, and the WCJ never made specific reference to either the forms or the statute in his judgment or reasons for judgment. This assignment of error lacks merit.

DEFENDANTS' CLAIM FOR RESTITUTION
In their answer to the appeal, defendants assign error on the part of the WCJ in failing to finding that Mr. Meneses violated La. R.S. 23:1208 and in failing to award them restitution under La. R.S. 23:1208(D). We dispose of defendants' claim for restitution by pointing out that defendants made no timely claim for such relief in the proceedings below, by reconventional demand or otherwise, and did not plead violation of La. R.S. 23:1208 in their answer to Mr. Meneses's claim. Although defendants' counsel did mention that statute and its effect during the course of the trial, he did not do so for the *118 purpose of asserting a claim for restitution, but only in the context of attempting to impeach Mr. Meneses's testimony relating to proof of the accident and medical causation. Such a claim may not be initiated in this court. We therefore dismiss defendants' answer to the appeal.

DECREE
The judgment of the Office of Workers' Compensation Administration, District 6 is affirmed. All costs of this appeal are assessed to the claimant-appellant, Walter Meneses.
AFFIRMED; ANSWER TO APPEAL DISMISSED.
NOTES
[1] Admittedly, this is mere speculation, but it is not unreasonable to assume that Mr. Meneses's description of a step or steps on the forklift itself may have been interpreted as a reference to a ladder or stairs, especially considering his limited English.