CRAIN, J.
|gThe plaintiff appeals a judgment dismissing his claims after a jury found he was not injured in an automobile accident. We affirm.
FACTS AND PROCEDURAL HISTORY
A vehicle operated by Burleigh Ruiz backed out of a parking space and hit a vehicle occupied by the plaintiff, Eurie Marie. Ruiz said he was going slowly and the impact “was so little, I didn’t hardly feel it.” In contrast, Marie said Ruiz was traveling about twenty to thirty miles per hour at the time of impact. Marie told Ruiz he was not hurt, but added he may need medical treatment in two to three weeks because his “health is not that good.” Marie’s extensive medical history includes multiple cervical surgeries stemming from a fall about fourteen years before the automobile accident, severe diabetes and relat *375 ed neuropathy in his lower extremities, as well as low back pain. At the time of this automobile accident, Marie had been disabled for eight years. He most recently sought treatment for neck pain about five months before the automobile accident.
Three weeks after the accident, Marie went to the emergency room at Terre-bonne General Hospital complaining of pain in his neck going down to his left knee. He reported the automobile accident and stated the symptoms began about two weeks prior to the emergency room visit. About two weeks later, .Marie treated with a chiropractor for a list of complaints, including neck, mid back, low back, and left knee pain. According to Marie, he “experienced immediate” neck and back pain in this accident that was significantly more severe than his pre-accident .pain,-specifying that the pain levels for his neck arid back before the accident were “5” and “4,” respectively, but both increased after the accident to “10.”
IsMarie was eventually examined by Dr. Christopher Cenac, an orthopedic surgeon who had performed his two previous.neck surgeries. Marie complained of low back and left knee pain, which he claimed started after this accident, MRI studies revealed a medial meniscus tear in his knee and degenerative disc disease in his low back. After conservative treatment for the low back pain was unsuccessful, Dr. Cenac recommended a laminectomy. For the torn meniscus, Dr. Cenac referred Marie to Dr. Henry Lawrence Haydel, also an orthopedic surgeon, who recorhmended arthroscopic surgery to repair the tear. Neither of these surgical procedures had been performed at the time of the trial.
Marie sued Ruiz and his liability insurer, Allstate Insurance Company, seeking, recovery for injuries to his neck, back, and left knee. The parties stipulated that Ruiz caused the subject accident. The remaining issues, including whether the accident caused any injuries to Marie, proceeded to a jury trial; Marie was the only witness to testify in person. During direct examination, he offered little testimony to establish the cause of his injuries, saying only that his knees struck the dashboard during-the accident. When asked why he did not go to a doctor sooner, Marie replied, “I didn’t feel like nothing was wrong with me.” During cross-examination, Marie said he first noticed swelling in his knee about two weeks after this accident, when he fell while cutting grass.
Marie conceded multiple.inconsistencies between the medical records and his earlier deposition testimony. In his deposition, he denied problems with his low back prior to the automobile accident; however, his medical records revealed multiple treatments at a pain management clinic for chronic low back pain during the two years preceding the accident. While Marie- acknowledged his pre-existing back pain to his chiropractor, he did not mention it to Dr. Cenac, Marie denied any history of falls,- but his medical records revealed treatment for frequent falls before |4the automobile accident. Marie did not disclose any falls to either Dr. Haydel or Dr. Ce-nac, including one that occurred after the automobile accident.
Through video depositions, the jury heard medical testimony from Dr. Cenac and Dr. Haydel, as well as from Dr. Andrew Todd, an orthopedic surgeon retained by the defendants to perform an independent medical examination; The physicians generally agreed that Marie suffered injuries in the automobile accident, including • the torn meniscus, but each conditioned his opinion, particularly as to causation, on the accuracy of the history provided by Marie regarding the onset of-his symptoms and the absence of any other accidents. When presented with evidence of Marie’s pre- *376 accident treatment for back pain, Dr. Ce-nac said Marie “wasn’t forthright” about the treatment and the failure to disclose it “discredits his history.” Both Dr. Haydel and Dr. Cenac, who were unaware of Marie’s post-accident fall, testified that a fall can cause the type of knee injury he suffered.
The jury rendered a verdict for the defendants, finding Marie did not suffer any injury caused by the automobile accident. The trial court signed a judgment in conformity with the jury’s verdict and dismissed the claim with prejudice. Marie appeals, assigning as error (1) the trial court’s failure to instruct the jury on the “Housley” causation presumption, (2) the jury’s finding of no causation, and (3) the jury’s failure to award damages.
DISCUSSION
Because this case ultimately turns on the jury’s assessment of Marie’s credibility, we first address the assignments of error wherein Marie contends the jury was manifestly erroneous in finding that he was not injured in the accident and in failing to award general or special damages. In a personal injury suit, the plaintiff must prove, by a preponderance of the evidence, both the existence of the injuries and a causal connection between the injuries and the accident. See Richardson v. Bridgefield Casualty Insurance Company, 14-1587 (La. App. 1 Cir. 8/10/15), 181 So.3d 61, 64; Kelley v. General Insurance Company of America, 14-0180 (La. App. 1 Cir. 12/23/14), 168 So.3d 528, 543, writs denied, 15-0157, 15-0165 (La. 4/10/15), 163 So.3d 814, 816. A tortfeasor is liable only for damages caused by his negligent act, not damages caused by separate, independent, or intervening causes. The plaintiffs burden includes proving that his injuries were not the result of separate, independent, and intervening causes. Richardson, 181 So.3d at 64; Kelley, 168 So.3d at 543-44.
A jury’s causation determination is a factual finding that should not be reversed on appeal absent manifest error. See Detraz v. Lee, 05-1263 (La. 1/17/07), 950 So.2d 557, 561. Under the manifest error standard, the appellate court does not decide whether the jury was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116. Reasonable persons frequently can and do disagree regarding causation in particular cases. But where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Hayes, 193 So.3d at 1116. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the jury’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
According to Marie, the “uncontro-verted expert testimony” of the treating physicians and the defense’s independent medical examination expert establishes |fihe injured his knee and aggravated his back in this accident. However, all of those medical expert opinions were premised on the accuracy of Marie’s history.
 The weight afforded a treating physician’s testimony is largely dependent upon the facts upon which his opinion is based. Edwards v. State Farm Mutual *377 Automobile Insurance Company, 10-2216, 2011 WL 2617384 (La. App. 1 Cir. 5/6/11); Wells v. Allstate Insurance Company, 510 So.2d 763, 768 (La. App. 1 Cir.), writ denied, 514 So.2d 463 (La. 1987). The plaintiffs credibility is especially significant when a physician must relate a medical condition to an accident based on the plaintiffs history. See Peters v. Harmsen, 03-1296 (La. App. 1 Cir. 4/2/04), 879 So.2d 157, 162. A plaintiffs lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. Meneses v. IFCO Systems, Inc., 04-1686 (La. App. 1 Cir. 9/23/05), 923 So.2d 111, 116-17; Peters, 879 So.2d at 162. Thus, in many cases the credibility of the history given by the plaintiff to his physicians becomes as important as the medical opinions based on that history. Meneses, 923 So.2d at 116-17.
Marie’s credibility was attacked numerous times at trial with inconsistencies in his statements, conflicts between his testimony and testimony of other witnesses, and material omissions in the history he provided to his treating physicians. The conflicts began with the description of the severity of the impact from the accident. Ruiz said he was slowly backing out of a parking spot and had just taken his foot off the brake to prepare to go forward, when he felt a “little” jolt. The impact damaged a taillight, which cost $87 to repair, and scuffed the paint on Ruiz’s vehicle. In contrast, Marie said Ruiz was traveling twenty to thirty miles per hour in reverse at the time of impact, which “slung [Marie’s] body to the left” and caused his knees to hit the dashboard.
17After reporting no injury at the scene, but warning of the possibility of needing treatment in the next two to three weeks, Marie reported to an emergency room three weeks after the accident, complaining of neck pain going down to his knee, which he said began about one week after the accident. When he saw a chiropractor two weeks later, Marie said he experienced an immediate increase in his pre-existing neck and lower back pain after this accident. Marie later failed to disclose any prior back pain to Dr. Cenac and instead claimed the pain started after the accident.
Marie never told his healthcare providers that he fell while mowing the grass. He testified as follows about the relationship between that fall and the onset of his knee pain:
A. I went to cut my grass, and that’s when all the problems started, pushing, just pushing on the lawn mower.
*⅜$
Q. So when did you notice swelling in your knee?
A. Okay. When I was cutting my grass and I fell and I didn’t know what was wrong, I was getting bad pains. And the pains was coming from above my hip, and it went down all the way to my feet. And I knew, I knew I have neuropathy.
So my neighbor, as a matter of fact, was outside barbecuing, and he came and picked me up and was going to bring me to the hospital, but I just went in. I stopped cutting the grass, and I went inside.
[[Image here]]
Q. You told me ... that three weeks after the accident, you started to cut your grass. Your leg started to hurt. It gave out, and you fell to the ground?
A. Right.
* * sH
Q. Help me out here. The reason you’re saying that Mr. Ruiz hurt you is because three weeks after the accident your leg was hurting and | ¿you were cutting the grass and you fell to the ground? That’s the reason you think he did it, that he’s responsible for your complaints?
*378 A. Well, that’s what happened to me. When my left leg, it’s like my leg would have been asleep, and you try to stand up on it. You’re going to fall. Well, that’s, that’s how it felt.
Marie added that his knee became discolored about three weeks to a month and a half after the automobile accident, which also coincided with his fall. Both Dr, Cenac and Dr. Haydel, who were not told of this fall, testified that Marie’s knee injury could have resulted from a fall.
Marie’s failure to disclose his pre-acci-dent back pain and treatment to Dr. Cenac and Dr. Todd also cast doubt on his veracity. The medical records establish Marie was treated for chronic back pain prior to the accident and, when examined by his chiropractor, reported the level of his pre-accident back pain at “5.” However, during his visit with Dr. Todd, Marie said he had no back pain prior to the accident, but after the accident his pain level was a “10.” Marie likewise did not disclose any prior back pain to Dr. Cenac, who testified:
I did not know this record, and maybe Dr. Todd didn’t see this record, [but] the records bear out that he did have some of these complaints prior to the accident. [He did] not really discuss this with Dr. Todd or myself, and that discredits his history and misleads Dr. Todd and [my] opinion that he never had any problems.
He certainly had problems which would make sense if you’re a bad uncontrolled diabetic. You should have problems in your legs because most people do. How do I know that’s true? The neuropathy in his report confirms that. But he didn’t—he wasn’t forthright in that for his complaints to Dr, Todd or to me.
* * *
So unfortunately, I would have to say that I can’t take what he’s saying about [the automobile] accident at face value because he had complaints and was seeing a pain doctor before that.
Marie’s credibility was the critical issue at the trial. It is apparent from the record that the jury rejected his testimony. Marie’s credibility affected not only his testimony, but also the medical opinions offered regarding the causal relationship | ^between the accident and the alleged injuries. See Richardson, 181 So.3d at 68; Meneses, 923 So.2d at 116-17; Peters, 879 So.2d at 162. The record reasonably supports the jury’s implicit finding that Marie suffered no increase in his back pain after this accident, and his knee injury resulted from a fall several weeks after this accident. Thus, the jury’s finding of no causation is not manifestly erroneous or clearly wrong. See Hayes, 193 So.3d at 1116; Edwards, 2011 WL 2617384 at p. 3. Because the jury found no causation, its failure to award damages to Marie is not manifestly erroneous or clearly wrong. The assignments of error directed at these findings are without merit.
In his remaining assignment of error, Marie argues the trial court abused its discretion by failing to instruct the jury about the “Housley” causation presumption. In Housley v. Cerise, 579 So.2d 973, 980 (La. 1991), the supreme court recognized a plaintiffs disability is presumed to be caused by an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. See also Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La. 1977). The presumption is rebuttable. Cooper v. United *379 Southern Assurance Co., 97-0250 (La. App. 1 Cir. 9/9/98), 718 So.2d 1029, 1041.
Louisiana Code of Civil Procedure article 1792B.requires the trial court to instruct jurors on the law applicable to the cause submitted to them. The trial court is responsible for reducing the possibility of confusing the jury and may- exercise the right to decide what law is applicable and what law is inappropriate. Adams v. Rhodia, Inc., 07-2110 (La. 5/21/08), 983 So.2d 798, 804. Adequate jury instructions fairly and reasonably point out the issues and provide correct I mprinciples of law for the jury to apply to those issues. Adams, 983 So.2d at 804. The trial court is under no obligation’to give any specific jury instructions submitted by either party; the trial court must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Adams, 983 So.2d at 804.
Trial courts are given broad discretion in formulating jury instructions. Adams, 983 So.2d at 804. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the trial court’s instructions does riot justify the appellate court’ conductirig the equivalent of a trial de novo, without first méasuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Adams, 983 So.2d at 805.
Marie argues the failure to give the Housley instruction was especially prejudicial “because much of his trial presentation focused on his good state of health prior to the collision,” and every treating physician “testified that there were no preexisting issues.” Alternatively, Marie focuses on his knee injury and contends he had no prior knee problems, thus -the trial court should have given the Housley instruction for that specific injury.
Marie’s claim of good health prior to the accident cannot be reconciled with the record. Before the accident, he underwent multiple neck surgeries, was disabled for eight years, was treated for chronic neck and low back pain within the two years preceding the accident, had a history of frequent falls, and was a severe | n diabetic with neuropathy in his legs, which, according to the medical evidence, can cause burning and throbbing. Dr. Cenac described Marie as “not healthy.”
While the medical records do not reflect prior knee pain, Marie’s overall poor physical condition makes it difficult to characterize him as a “person in good health” before the accident, the first component of Housley. In any event, wé find that ány error in failing to give the requested instruction did not preclude the jury from reaching a verdict based on the law and facts. See Adams, 983 So.2d at 805, Marie had ample evidence to establish causation without the benefit of any presumption. All three physicians, including the defense’s independent medical examination expert, opined the accident caused Marie’s back pain' and knee injury if the history he provided was accurate. Thus, a causation finding depended entirely on Marie’s credibility, which was repeatedly and effectively impeached, creating considerable doubt as to the veracity of his testimony and, equally important, the history he provided to his treating physicians. While Marie complains about the omission- of a-jury instruction, the record' establishes-that the jury’s conclusion the accident did not cause Marie’s injuries was due to. Marie’s lack of credibil *380 ity, not the lack of a jury instruction. This assignment of error is without merit.
CONCLUSION
The trial court’s judgment rendered in conformity with the jury’s verdict and dismissing the plaintiffs claims is affirmed. All costs of this appeal are assessed to Eurie Marie.
AFFIRMED.