CRAIN, J.
| .¿This is an appeal of a judgment dismissing the plaintiffs claims against the defendants, which was rendered in conformity with a jury’s verdict that the defendant was at fault but did not cause the plaintiffs alleged injuries. The plaintiff appeals, challenging the finding of causation. The defendant has answered the appeal, challenging the finding of fault. We affirm.
FACTS
On July 18, 2011, as Wendy Richardson was driving to her residence in Powers Trailer Park in Ascension Parish, her vehicle’s right rear tire fell into a hole that suddenly developed in the gravel approach to the wooden bridge that served as one of the entrances to the trailer park from Airline Highway (“the bridge accident”). Richardson contends that this caused the vehicle to abruptly stop, resulting in serious injuries to her that necessitated spinal surgery. Richardson instituted the instant suit for damages against the owner of the trailer park, Homewood Holdings, LLC, and its insurer, Scottsdale Insurance Company.[1]
The matter proceeded to a jury trial, where Richardson testified that she did not immediately seek medical attention for her injuries because she had pain medications at home and did not want to violate her contract with her pain management specialist, Dr. Thomas Cockerham. Richardson explained that in 2008, she suffered a fractured skull and severe injuries to her left shoulder as a result of a domestic violence incident involving her husband. Consequently, Dr. Kelly Scrantz, a neurosurgeon, performed brachial plexus surgery to repair nerve damage that affected her left side, and particularly her left arm. Dr. Scrantz preferred her to Dr. Cocker-ham in 2009, and she had been treating with him since then and taking narcotic pain medication that was monitored through monthly visits. Richardson testified that her , contract with Dr. Cockerham prohibited her from receiving medication from any other source; therefore, she waited to seek treatment until her next regularly scheduled appointment with him, approximately three weeks after the bridge accident.
When Richardson saw Dr. Cockerham she related that the car’s tire falling into *64 the hole “jolted” her and that she had pain in her neck, back, and -hip, which was focused on her right side. Dr. Cockerham noted that Richardson’s gait appeared to be normal, but her neck movement was restricted and she. had some spasms along the back of her neck into her shoulders. Dr. Cockerham: prescribed her regular pain medications and administered a trigger point injection to further relieve her pain. Dr. Cockerham continued this course of treatment and Richardson’s low back pain eventually resolved to “her baseline,” but her neck.pain worsened. In May 2012, Dr. Cockerham referred Richardson back to Dr. Scrantz for neurosurgical evaluation.
Dr. Scrantz found that Richardson had abnormalities in the C5-6 and C6-7 disk spaces in her neck, which were causing significant- compression .and ■ radicular symptoms. Dr. Scrantz testified that these were completely separate issues from the brachial plexus issue she had in 2008. On November 20, 2012, Dr. Scrantz performed upper and anterior cervical decompression and fusion spinal surgery on Richardson, Accepting the history of the accident and onset of symptoms related by Richardson as true, - Dr. Scrantz opined that it was more probable than not that the trauma resulting from -the bridge accident caused the need for spinal surgery and his treatment.
|4The jury found that Homewood Holdings was at fault for the bridge" accident. But, despite the testimony of Richardson and Drs. Cockerham and Scrantz, the jury found that Homewood Holdings’ fault was not a cause of Richardson’s injuries. In conformity with the jury’s verdict, the trial court rendered judgment in favor of Homewood Holdings and Scottsdale, dismissing Richardson’s claims against'them. Both Richardson and Homewood Holdings filed motions for judgment notwithstanding the verdict, which the trial court denied. Richardson now appeals, challenging the jury’s findings on causation. Homewood Holdings has answered the appeal, challenging the jury’s finding that it was at fault.
DISCUSSION
In a personal injury suit, liability is determined under the duty-risk analysis, which requires that the plaintiff prove (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant failed to conform his conduct to the appropriate standard of care, (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries, (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries, and (5) actual damages. Brewer v. J.B. Hunt Transport, Inc., 09-1408 (La.3/16/10), 35 So.3d 230, 240. In order to recover, the plaintiff must prove, by a preponderance of the evidence, both the existence of the injuries and a causal connection between the injuries and the accident. Kelley v. General Ins. Co. of America, 14-0180 (La.App. 1 Cir. 12/23/14), 168 So.3d 528, 543, writs denied, 15-0157, 15-0165 (La.4/10/15), 163 So.3d 814, 163 So.3d 816.
A tortfeasor is liable only for damages caused by his negligent act, not damages caused by separate, independent, or intervening causes. Hence, the plaintiffs burden includes proving that her injuries were not the result of separate, 1,^independent, and intervening causes. Kelley, 168 So.3d at 544. The test for determining the causal relationship between the accident and injury is whether the plaintiff proved through medical testimony that it is more probable than not that her injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603. (La.2/20/95), 650 So.2d 757, 759. A plaintiff may be aided in proving *65 causation by the Housley presumption, which provides that an injury is presumed to have resulted from an accident if before the accident the plaintiff was in good health, but, commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterward, providing that the medical evidence shows a reasonable possibility of a causal connection between the accident and the disabling -condition.[2] Housley v. Cerise, 579 So.2d 973, 980 (La. 1-991); see also Maranto, 650 So.2d at 761.
The jury’s conclusions on the issues of causation and application of the Housley presumption are factual findings subject to the manifest error standard of review. See Khammash v. Clark, 13-1564 (La.5/7/14), 145 So.3d 246, 258-59; Detraz v. Lee, 05-1263 (La.1/17/07), 950 So.2d 557, 562-63; Housley, 579 So.2d at 979. Under the manifest error standard, the appellate court does not decide whether the jury was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)." "Where there are two permissible [ fiviews of the evidence, the jury’s choice between them cannot be manifestly erroneous or clearly wrong. Id.' In conducting its review the appellate court must be cautious not to re-weigh the evidence or substitute its own factual finding just be-, cause it would have decided the case differently. Guillory v. Lee, 09-0075, (La.6/26/09), 16 So.3d 1104, 1117.
On appeal, Richardson contends that’ the jury erred in its finding of no causation when both Drs. Scrantz and Cockerham testified that her injuries were caused by the bridge accident and were unrelated to her previous injuries. She contends that she was entitled' to the Housley presumption, that the defendants presented no countervailing evidence, and therefore the judgment in favor of the defendants must be reversed. Homewood Holdings maintains that the jury’s causation finding was reasonably based on its credibility determinations.
Richardson is correct that the only medical testimony presented at trial related her neck’and back injuries to the bridge accident and distinguished her neck and back injuries from those resulting from the domestic violence incident. Dr. Cocker-ham explained that Richardson had a complete radiographic evaluation in 2008 or 2009, including a cervical M'RI that revealed a small C5-6 disk protrusion. ' An EMG test done at- that time was negative for radicular findings, indicating that her brachial plexus was the cause of her problems. Dr. Cockerham testified that Richardson had discogenic, but not radicular, pain in her neck at that time. In contrast, testing done after the bridge accident showed a new cervical disk injury at the C3-4, 5-6,' and 6-7 levels, which Dr. Cock-erham believed to be the' cause of radicular pain on her- right side.
Dr. Scrantz clarified that the prior injuries sustained in the domestic violence incident were to Richardson’s left side and that he did not treat her for any neck injury at that time.. He noted that she *66 complained of neck pain at that time, but he 1Relieved that pain was caused by tom nerves in her brachial plexus. Dr. Scrantz also testified that the MRI done at that time showed no significant nerve compression. In contrast, after the bridge accident, Dr. Scrantz found that Richardson had significant abnormalities in the C5-6 and C6-7 spaces that were causing significant compression. Accepting the history given by Richardson as true, with no intervening causes, Dr. Scrantz opined that it was more probable than not that the trauma of the bridge accident caused the need for the spinal surgery and treatment he performed.
Notably, the testimony of both doctors was ultimately based on the history given to them by Rchardson that her neck and right side pain began after she was jolted in the bridge accident.
At trial, Richardson testified that the bridge accident occui’red as she and her husband were returning to the trailer park from a trip to Burger King. Richardson was driving because her husband, who was riding in the passenger seat, had been drinking. It was explained at trial that Rchardson and her husband were still married, but lived in separate trailers because of her husband’s drinking problem and the prior domestic violence incident. Richardson testified that the domestic violence incident occurred when her husband attacked her while he was drinking. Richardson acknowledged that she originally told Dr. Scrantz that she was injured when she fell at home, but denied that the misrepresentation was to protect her husband. Medical records further indicated that after the domestic violence incident she told emergency room personnel that she had been battered but later denied that she was a victim of spousal abuse. However, Dr. Cockerham testified that while treating her for her 2009 injuries, Richardson discussed with him that her husband had attacked her, and Dr. Scrantz testified that although she initially indicated her injuries were the result of a fall, he later learned that she was a victim | Rof domestic abuse. Her husband testified at trial that he blacked out and had no memory of the domestic violence incident, pointing out that there was no evidence or proof that he actually assaulted Richardson, but not denying the assault either. Richardson testified that as a result of the injuries sustained in that incident, she will have left shoulder problems for the rest of her life and that she had been approved for social security disability benefits.
Regarding the bridge accident, Richardson approximated that she was driving ten to fifteen miles per hour when her car suddenly stopped. Richardson and her husband exited the car and discovered that her rear passenger tire had sunk into the hole, which her right front tire drove over with no problem. Richardson had lived in the trailer park for approximately a year and a half at that time and had not complained of any defects in the bridge, had not seen the hole prior to her tire falling into it, and had not previously noticed anyone filling holes on the access road. At trial, Richardson testified that she used both that access road to the trailer park, as well as a second entrance, depending on where she was going. Richardson acknowledged that in a January 2013 deposition she denied knowing of an alternate second entrance prior to the bridge accident, explaining the discrepancy by saying, “you have to understand I was in a neck brace and just had surgery [(the spinal surgery performed by Dr. Scrantz) ] and I mean I’m not perfect; I’m not perfect.” She further explained that her deposition was lengthy, resulting in 203 transcribed pages, and she was in pain on that date because she had to drive herself and could not take any pain medications.
*67 Richardson testified that she did not repair the insignificant damage that the bridge accident caused to her car. She said she was told that the repair would entail a ten dollar plastic piece and she was unwilling to pay the estimated labor cost. The mechanic who inspected the car and prepared the estimate testified at Ifltrial that there was no visual damage to the car’s undercarriage and his estimate was “basically just replacing the strut.” He estimated that work would be necessary if she “wanted to make it brand new,” but stated “that [could have been caused by] wear, tear, or anything.”
Richardson testified that the sudden stop of her car in the bridge accident caused her neck to go “up and back.” She said she had pain in her neck and realized she was hurt shortly after shé began getting headaches. As previously set forth, Richardson testified at trial that she did not report to the emergency room because she already had pain medication and did not want to risk violating her contract with Dr. Cockerham. Defense counsel pointed out that during her deposition, Richardson was asked why she did not go to the emergency room and answered, “It didn’t hurt that bad to go to the emergency room. I had an appointment with the doctor for my arm and I think it was the next day, a couple, a few days later, that real close so there was no need to. It wasn’t an emergency, you know.” When asked whether her trial testimony was inconsistent with that given in her deposition, Richardson responded, “No, I basically said the same thing. I mean it’s just another way of putting it. I mean I don’t remember exactly word for word what I said that day.”
Richardson described bad headaches after the accident, which she claimed she never suffered before. She specifically denied having any headaches following the domestic violence incident despite suffering a skull fracture. She also described pain on the right side of her neck, which radiated into her shoulder and 'hands. Richardson denied having any neck pain prior to the bridge accident, but admitted that her medical records reflected that she complained to Dr. Scrantz and another doctor of neck pain in 2008. She clarified,, “with my arm it’s all connected on the right.” She then acknowledged that during a 2008 psychiatric evaluation, |toshe reported that she had always had neck pain. She also acknowledged that at her monthly appointment with Dr. Cockerham in the week prior to the bridge accident, she reported having headaches and neck pain. She ¡ maintained, however, that “that’s according to my shoulder on the left side.”
Richardson testified that on November 20, 2012, following the spinal surgery by Dr. Scrantz, she was involved in another accident when she was rear-ended. She described the accident as minor and causing no damage to her vehicle. At her scheduled appointment with Dr. Scrantz as a follow-up to the surgery, she informed him of the rear-end collision but admitted that she did not disclose that collision to Dr. Cockerham.
After hearing the testimony and considering the- evidence presented, the jury rejected the .testimony of Richardson and her witnesses and concluded that Richardson’s injuries were not caused by the bridge accident. Richardson argues that since no countervailing medical evidence was presented, the jury’s conclusion was manifestly erroneous. However, the jury is not bound by the testimony of an expert. Rather, expert testimony is to be weighed the same as any other evidence, meaning that the experts’ opinions may be rejected in whole or in part. The jury may even substitute its own common sense *68 and judgment for that of an expert when such substitution appears warranted on the record as a whole. C.M.J. v. L.M.C., 14-1119 (La.10/15/14), 156 So.3d 16, 31.
The defense pointed out numerous inconsistencies in Richardson’s testimony and medical records to the jury, as well as evidence that the bridge accident caused such insignificant damage to Richardson’s vehicle that she opted not to replace the damaged ten dollar part. All of this could have led the jury to reasonably conclude that Richardson was not credible. Although both Drs. Cockerham and Scrantz opined that Richardson’s injuries were more probably than In not caused by the bridge accident, they acknowledged that they based their opinions on the history related to them by Richardson. .• Thus, the jury’s assessment of Richardson’s credibility affected not only Richardon’s testimony, but also the medical opinions offered regarding the causal relationship between the accident and the alleged injuries. Accord Magee v. Abek, Inc., 04-2554 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807; Turner v. Cleveland Trust Co., 95-2488 (La.App. 4 Cir. 5/22/96), 686 So.2d 871, 879, writ denied, 96-1531 (La.9/27/96), 679 So.3d 1350. Considering this, we cannot conclude that the jury was manifestly erroneous in rejecting all of the testimony, in refusing to apply the Housley presumption, and in concluding that Richardson failed to prove that her injuries were caused by the bridge accident. Absent a finding of manifest error, we cannot substitute our judgment for that of the jury.
ANSWER TO APPEAL
Homewood Holdings filed an answer to Richardson’s appeal, asking this court to reverse - that part of the trial court’s judgment finding Homewood Holdings at fault with regard to the bridge accident. The trial court’s written judgment sets forth the interrogatories presented to the jury and the jury’s responses. However, that information is in the nature of reasons for judgment.[3] See La. Code Civ. Pro. art. 1918. Appellate courts review judgments, not reasons for judgment. Moreno v. Entergy Corp., 12-0097 (La.12/4/12), 105 So.3d 40, 52. The judgment’s decretal language specifies that judgment was rendered in favor of Home-wood Holdings, dismissing Richardson’s claims against it. Accordingly, we will not review the liability issue raised in Home-wood Holdings’ answer to the appeal.
JjgCONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The relief requested in the, answer to appeal is denied. Costs of this appeal aré assessed to Wendy Richardson.
JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.
HOLDRIDGE, J., concurs with reasons.
McDONALD, j., concurs.

. Richardson also named the Parish of Ascension as a defendant. The suit was dismissed as to the Parish on the Parish’s motion for summary judgment upon the trial court finding that the Parish did not have actual or constructive notice of the risk caused by the defective condition of the gravel access road and that the Parish did not have ownership, custody, or control of the gravel access road.

. The presumption has its roots in workers' compensation, but was extended to general negligence suits in Housley. See Detraz v. Lee, 05-1263 (La.1/17/07), 950 So.2d 557, 560 n. 2; Guillot v. Eschete, 13-2050 (La.App. 1 Cir. 5/29/14), 2014 WL 3701113, p. 4 n. 3.

, Although Louisiana Code of Civil Procedure article 1918 requires that reasons for judgment be set forth in an opinion separate from the judgment/ the inclusion of surplus language in a judgment that is complete in every respect does not render the judgment invalid. See Conley v. Plantation Management Co., L.L.C., 12-1510 (La.App. 1 Cir. 5/6/13), 117 So.3d 542, 547, writ denied, 13-1300 (La.9/20/13), 123 So.3d 178.