CRAIN, J.
|2The plaintiffs, Wayne and Roberta Bouchon, appeal a judgment of the trial court awarding $5,000 in damages for injuries sustained by Wayne in an automobile accident. We affirm.
FACTS AND PROCEDURAL HISTORY
The accident giving rise to this litigation occurred on June 21, 2013. The Bouchons were traveling in “stop and go”, traffic around lunchtime on Highway 22 near Mandeville when, after stopping for a red light, their vehicle was struck in the rear by a vehicle operated by Jeremy Walken-ford. The Bouchons exited their vehicle and told Walkenford, and later the responding police officer, they were not hurt. When the scene investigation was finished, the Bouchons continued on their way to a restaurant for lunch. At the restaurant, Wayne noticed some stiffness in his back and, later that evening, began experiencing low back pain that radiated into his right leg. Although he claims in this proceeding the pain continued and even worsened during the ensuing weeks and months, Wayne did not seek medical treatment until almost twelve months after the accident.
Shortly after Wayne began his medical treatment, the Bouchons filed suit against Walkenford, his parents, and their automobile liability insurer, United Services Automobile Association, seeking damages for the injuries allegedly sustained by Wayne in the accident, and for Roberta’s alleged loss of consortium. The defendants stipulated the accident was caused by the fault of Walkenford, but reserved the right to contest causation and the degree and extent of any injuries. The Bouchons stipu *1102 lated their recovery did not exceed $50,000, and the matter proceeded to a bench trial.
The evidence at trial included testimony from Wayne and Roberta; the trial deposition of Dr. John Logan, an orthopedist who treated Wayne; and medical ^records reflecting Wayne’s treatment for low back pain both before and after the 2013 automobile accident. The pre-accident treatment was for an incident that occurred in 2009 when Wayne injured his low back while lifting a heavy box. He was diagnosed with a herniated disc at the L5-S1 level and underwent a lumbar microdiscec-tomy in 2010, performed by Dr. Luden Miranne, Jr., a neurosurgeon. Wayne was released from Dr. Miranne’s care in August, 2010, and did not receive further treatment for back pain prior to the 2013 automobile accident.
At the time of the automobile accident, Wayne was unemployed and, according to his trial testimony, did not immediately seek medical treatment because he could not afford to be “laid up.” In April, 2014, about ten months after the accident, he was hired by Office Depot as a sales representative and cashier, a job requiring him to stand for extended periods of time and sometimes pick up furniture. Wayne said the physical demands of the job were “tough” on him, and on one occasion he helped pick up a chair and noticed “it was causing stress” in his back.
His first treatment after the automobile accident was on June 10, 2014, when he presented to Dr. Miranne’s nurse practitioner with a history of worsening back pain since the automobile accident. The pain, according to the history, worsens “the longer he stands.” The nurse practitioner prescribed pain medication and ordered an MRI. Wayne did not treat again at Dr. Miranne’s clinic.
Wayne began treating with Dr. Logan on June 26, 2014, after the Bouchons filed suit. In his history to Dr. Logan, Wayne reported that after the accident he immediately felt low back pain and numbness in his right foot and toes, which steadily increased after the accident. He also stated the symptoms worsened over the previous two to three months, adding that his job at Office Depot required prolonged standing. Wayne underwent a lumbar MRI that showed degenerative Ldisc disease at the site of the previous surgery, a finding Dr. Logan confirmed was “nothing new.”
Dr. Logan diagnosed Wayne with low back pain radiating into his right lower extremity, which he treated with prescription medications, and, over the course of the next several months,, three selective nerve root injections. Based upon Wayne’s history, Dr. Logan opined that the automobile accident caused his low back pain. However, Dr. Logan acknowledged that patients with Wayne’s preexisting back condition can become symptomatic for a variety of reasons, even without a traumatic event, and the condition can be aggravated by prolonged standing. Dr. Logan also testified there was a “correlation” between Wayne’s work at Office Depot and the increase in his symptoms.
After taking the matter under advisement, the trial court issued written reasons finding the Bouchons failed to satisfy their burden of proving the automobile accident caused Wayne’s back and leg pain that prompted the treatment beginning in June, 2014. The trial court noted the accident did not involve a significant impact and Wayne did not seek medical treatment until June, 2014, almost one year after the accident and two months after he started working at Office Depot. The trial court was not persuaded by the Bouchons’ assertion that Wayne did not seek medical treatment because of his job search. Citing *1103 Dr. Logan’s testimony that activity changes can increase symptomology, the trial court explained:
•While the Court understands plaintiffs desire to find a better job, the plaintiff clearly did not need treatment until [one occasion when] he could not get out of [a] chair and was shaking from pain. This occurred after he began working at Office Depot, and supports a finding that the change in the physical demands of plaintiffs employment led to the need for treatment, not the accident approximately 50 weeks earlier.[1]
|i;The trial court awarded $5,000 for the “minimal pain and suffering” experienced by Wayne before he started working at Office Depot. Denying the claims for lost wages and loss of consortium, the trial court found Wayne did not miss work for medical reasons, and changes in the Bou-chons’ marital relationship were due to the termination of Wayne’s previous employment in medical sales and the resultant loss of income. A judgment was signed in accordance with those reasons. The Bou-chons appeal and assign as error the trial court’s finding that they did not prove medical causation with regard to Wayne’s back injury.
DISCUSSION
In a personal injury suit, the plaintiff bears the burden of proving the causal connection between an accident and the resulting injuries. Tate v. Kenny, 14-0265 (La.App. 1 Cir. 12/23/15), 186 So.3d 119, 127. A tortfeasor is liable only for damages caused by his negligent act, not damages caused by separate, independent, or intervening causes. Richardson v. Bridgefield Casualty Insurance Company, 14-1587 (La.App. 1 Cir. 8/10/15), 181 So.3d 61, 64; Kelley v. General Insurance Company of America, 14-0180 (La.App. 1 Cir. 12/23/14), 168 So.3d 528, 543, writs denied, 15-0157, 15-0165 (La. 4/10/15), 163 So.3d 814, 816. The plaintiff must prove his injuries were not the result of separate, independent, and intervening causes. Richardson, 181 So.3d at 64; Kelley, 168 So.3d at 543-44. The test for détermining the causal relationship between the accident and injury is whether the plaintiff proved through medical testimony that, more probably than not, his injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Company, 94-2603 (La. 2/20/95), 650 So.2d 757, 759.
16Causation is a factual finding that should not be reversed on appeal absent manifest error. Detraz v. Lee, 05-1263 (La. 1/17/07), 950 So.2d 557, 561. Under the manifest error standard of review, a reviewing court' may not merely decide if it would have found the'"facts of the' case differently, Hayes Fund for First United Methodist Church of Welsh. LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, (La. 12/8/15), 193 So.3d 1110, 1115; see also Hall v. Folger Coffee Company, 03-1734 (La. 4/14/04), 874 So.2d-90, 98. Rather, to reverse a trial court’s factual-conclu sion, the appellate court must -satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly .wrong, Hayes, 193 So.3d at 1115-16; Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882. (La. 1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels *1104 that its own evaluations and inferences are as reasonable. Hayes, 193 So.3d at 1116; Richardson, 181 So.3d at 65.
The Bouchons argue that their testimony describing the onset and duration of Wayne’s symptoms was not impeached, and that Dr. Logan confirmed the automobile accident caused the symptoms necessitating the treatment beginning in 2014. They also point out the defendants “did not call a single witness or introduce a shred of evidence bearing on the medical causation or damages issue.” Given the absence of contrary evidence, the Bou-chons maintain the trial court was not presented with two permissible views of the evidence; therefore, the causation finding must be manifestly erroneous.
While the Bouchons are correct that the defendants did not call any medical witnesses, as plaintiffs, they had the burden of proving causation; the defendants were not required to disprove causation. See Tate, 186 So.3d at 127; Richardson, 181 So.3d at 64. The causation evidence is not as straightforward as the Bouchons suggest.
Wayne did not seek medical treatment until months after the accident. Nearly two months before seeking medical treatment, he began a job that was more physically demanding than his previous jobs. Wayne testified about the job:
A. It was tough. Constantly standing on my legs ... and pain in my buttocks. It would affect me. I basically sat on a sofa and relaxed and watched television. Basically all I could do when I got back home.
Q. Yes, sir. You didn’t injure yourself at Office Depot, did you?
A. No. The only thing they did want me to do is start picking up furniture. At the time, they said if you have to pick up furniture and it’s heavy, you can ask someone to help. Which they usually did. But then, like I said, we decided to pick up a chair. I decided to pick up a chair. But I noticed it was causing stress in my back and stuff.
So I went back to Dr. Logan and said ... I was [having] trouble picking up chairs and stuff. And he told me you shouldn’t be picking] up anything [over] 25 pounds.
During cross-examination, he testified:
Q. Now, it was right before you went to ... see Dr. Miranne that you did something at Office Depot that aggravated your back; is that correct?
A. Well, I picked up something over 25 pounds. And it affected my back. So because that aggravated the thing a little bit, I talked to [Dr.] Logan to give me an excuse not to pick up anything over 25 pounds.
* * *
Q. And you picked up something over 25 pounds, and that’s what really stressed your back, and you ended up going to see Dr. Miranne?
A. No. It had nothing to do with that going to see [Dr.] Miranne. It was when I was in the house, and I tried to move, I couldn’t. Like I was fixed, trying to do that. Like my body could not move to go 15 feet to walk across. That’s what stressed my back and it was achy and stuff. It had nothing to do with Home Depot. Office Depot.
* *
*
|rQ. The types of problems that you had when had back surgery [in 2010] was pain down your legs and [into] your toes; is that correct?
A. Right. Yes.
Q. Right before you saw [Dr.] Mir-anne, did you lift furniture?
A. No.
*1105 Q. You didn’t do anything?
A. No....
Q. Just standing up all day long?
A. Just standing up all day long.
Q. And that’s what aggravated your back?
A. Yeah. Any time I stand up, it causes, aggravates the pain in my leg for a long period of time.
Roberta testified that Wayne suffered back pain continuously from the time of the automobile accident until he sought treatment; however, on cross-examination, she testified about the Office Depot job:
Q. And from your understanding, that job require[d] him to be on his feet all day long; is that correct?
A. Yes.
Q. And that’s when he really started having problems, when he had to stand up on his feet all day long; is that correct?
A. Yes.
Q. And that’s when, after he started that activity, that he had to go to [Dr.] Miranne; is that correct?
A. It got worse because he was standing. It was not the kind of job he wanted. But he had to have a job.
Dr. Logan testified that the automobile accident caused Wayne’s degenerative back condition to become symptomatic, and the treatment he rendered to Wayne was reasonably related to the accident. However, Dr. Logan based his opinion on the history provided by Wayne. He acknowledged that | gdegenerative back conditions can become symptomatic for many reasons, explaining:
Q. [Wayne] had back surgery in 2010 and he’s complaining of ongoing symptoms with respect to his low back and his right leg. My understanding, in looking at your diagnosis, is that there was really nothing new with respect to the MRI ....
A. Right .... I think what you’re asking [is] in the absence of a motor vehicle accident, can a patient with his history of previous discectomy present with his symptomology? .... Yes they can.
Q. And they could be aggravated by working in the garden, causing them to be symptomatic?
A. Sure.
Q. Can it be aggravated by standing for prolonged periods of time?
A. It can, yes.
Q. So, if he had started engaging in a physical activity within the two months before [seeing] you that he had not done before, such as standing for prolonged periods of time with a new job, that can cause this type of condition to flare [up] and cause him symptoms?
A. ... Yes. Patients can become symptomatic due to a variety of reasons. Activity changes can cause increased symp-tomology. That only makes sense. Therefore, I am dependent on what the patient tells me as to what causes their problem.
Q. The truth of the historian.
A. Always.
After noting a “correlation” between the Office Depot job and Wayne’s increased symptoms, Dr. Logan explained how he determined if the job or accident caused the continuing symptoms:
A. Very difficult, if not impossible. He’s telling us that that’s a painful activity for him. That is a reasonable activity that’s painful with his anatomic condition. That’s what I’m the expert in. Connecting that symptomology to the motor vehicle accident, which is why I’m sitting here, I’m filling in the blanks, too. I have to rely on what the patient tells me is the inciting event that led him to be symptomatic ... based on an event[,] *1106 and then you do an activity , that causes those symptoms, is it the activity causing it. or is it the event that led to the symptomology? I don’t know if there’s anybody on the planet that can say that.
|1ftWe find the evidence presents more than one permissible view of the cause of ■Wayne’s symptoms. Wayne first presented ■for treatment nearly twelve months after the automobile accident, but only about two months after starting a job' he described as. physically “tough” on him. The trial court was not persuaded that the delay in treatment was due to Wayne’s job search. Rather, the trial court reasonably inferred Wayne delayed treatment because the symptoms from the automobile accident were not significant.
While Dr. Logan opined that Wayne’s continuing back pain was probably caused by the automobile accident, his opinion was based on the history provided by Wayne. Thus, the trial court’s assessment of Wayne’s credibility affected the weight given to both Wayne’s trial testimony and the medical opinions offered to establish causation between the automobile accident and the alleged injuries. See Richardson, 181 So.3d at 68. Dr. Logan conceded that Wayne’s preexisting condition and the physical demands of the Office Depot job made it very difficult to determine causation. The trial court is not bound by' the testimony of an expert. Expert testimony must be weighed like any other evidence, and the expert’s opinions may be rejected in whole or in part. The factfinder may substitute its own common sense, and'judgment for that of. an expert when doing so appears warranted from the whole .record. See Richardson, 181 So.3d at 67-68.
Reasonable persons frequently disagree about causation in particular cases. Hayes, 193 So.3d at 1116. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Hayes, 193 So.3d at 1116; Richardson, 181 So.3d at 65. Based upon the entire record, the trial court could have reasonably concluded Wayne was injured in the automobile incident, but not to the extent alleged. See Mitchell v. Access Medical Supplies, Inc,, 15-0305 (La.App. 1 Cir. 11/9/15), 184 So.3d 118, 122. The finding that the plaintiffs did not prove the automobile accident caused the symptoms for which Wayne sought medical treatment is not manifestly erroneous or clearly wrong. This assignment of error has no merit.[2]
CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed to Wayne and Roberta Bouchon.
AFFIRMED.

. The trial court also rejected the suggestion that Wayne did not seek treatment because he lacked health insurance. While scant evidence was presented to support that explanation, the trial court pointed out that Wayne had insurance for medical treatment through his personal automobile policy. - • ■

. Although not assigned as error, the Bou-chons argue in their brief that the trial court erred in awarding only $5,000 in genéral damages and in denying recovery for Roberta’s alleged loss of consortium. Because we find the trial court’s causation determination was not manifestly erroneous, we also find no abuse of discretion in the quantum determinations. See Theriot v. Allstate Insurance Company, 625 So.2d 1337, 1340 (La. 1993).