979 So.2d 500 (2007)
Timothy Kim DEVALL
v.
BATON ROUGE FIRE DEPARTMENT.
No. 2007 CA 0156.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*501 Frank J. Ferrara, Jr. Walker, LA, for Claimant/Appellee, Timothy Devall.
E. Wade Shows, Eugene Booth, Gwendolyn K. Brown, Baton Rouge, LA, for Defendant/Appellant, Baton Rouge Fire Department.
Before WHIPPLE, GUIDRY and HUGHES, JJ.
WHIPPLE, J.
This is an appeal from a judgment of the Office of Workers' Compensation Administration, District 6. Claimant, Timothy Devall, a firefighter employed by defendant, the Baton Rouge Fire Department ("the Fire Department"), for twenty-eight years, filed a disputed claim for compensation, contending that his heart condition was an occupational disease as defined by the Heart and Lung Act, LSA-R.S. 33:2581, and, thus, that he was entitled to workers' compensation benefits.
Following trial in this matter, the workers' compensation judge determined that Devall was entitled to workers' compensation benefits based on the Heart and Lung Act and rendered judgment accordingly. From this judgment, the Fire Department appeals, averring that the workers' compensation judge erred: (1) in rendering judgment in favor of Devall where the evidence clearly established that no causal relationship existed between Devall's heart condition and his employment; (2) in finding that the evidence adduced by the Fire Department was inadequate to rebut the presumption in favor of Devall as established by the Heart and Lung Act; and (3) in failing to exclude the testimony of Dr. David Hutchinson pursuant to Daubert v. *502 Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993), in that the testimony was without scientific basis.

EVIDENTIARY RULING

(Assignment of Error No. 3)
In the instant case, the Fire Department filed a "Motion to Limit Trial Testimony," contending that the testimony of Dr. David Hutchinson should be precluded pursuant to LSA-C.E. art. 702 as lacking in scientific basis. The motion was denied. On appeal, the Fire Department contends that the workers' compensation judge erred in the performance of his gatekeeping role pursuant to Daubert and Foret in determining that the testimony of Dr. Hutchinson was reliable and in refusing to exclude the testimony. Because a finding of an evidentiary error may affect the applicable standard of review, in that this court must conduct a de novo review if the trial court commits an evidentiary error that interdicts the fact-finding process, alleged evidentiary errors must be addressed first on appeal. Wright v. Bennett, XXXX-XXXX (La.App. 1st Cir.9/28/05), 924 So.2d 178, 182.
Louisiana Code of Evidence article 702 provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In Foret, the Louisiana Supreme Court adopted the federal guidelines for admissibility of an expert's opinions, as explained by the United States Supreme Court in Daubert. Because LSA-C.E. art. 702 is virtually identical to its source provision in the Federal Rules of Evidence, F.R.E. 702, the Louisiana Supreme Court applied the Daubert analysis, which allows a more flexible standard for determining admissibility while recognizing the detailed analysis in which the trial court must engage to satisfy its gatekeeping function. Foret 628 So.2d at 1121-1123. Under Daubert, the trial court is charged with the duty of performing a gatekeeping function to ensure that the expert testimony is not only relevant, but also reliable.[1]Daubert, 509 U.S. at 589, 113 S.Ct. at 2795.
To ensure reliability, the Daubert standard requires that the expert's opinions be grounded in methods and procedures of science, rather than just subjective belief or unsupported speculation. Accordingly, before expert testimony is admitted, the court must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. Daubert, 509 U.S. at 590-593, 113 S.Ct. at 2795-2796; Vardaman v. Baker Center, Inc., 96-2611 (La. App. 1st Cir.3/13/98), 711 So.2d 727, 731 n. 6.
In determining whether expert: testimony is reliable, the Court in Daubert enumerated illustrative considerations to determine whether the reasoning and methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, as follows: (1) whether the expert's theory or technique can be and has been tested, (2) whether *503 the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential rate of error, and (4) whether the methodology is generally accepted in the scientific community. Daubert, 509 U.S. at 593-594, 113 S.Ct. at 2796-2797; Mitchell v. Uniroval Goodrich Tire Company, Inc., 95-0403 (La.App. 4th Cir.12/28/95), 666 So.2d 727, 729, writ denied, 96-0260 (La.3/15/96), 669 So.2d 421.
The decision to admit or exclude expert testimony is within the sound discretion of the trial court, and its judgment will not be disturbed by an appellate court unless it is clearly erroneous. LSA-C.E. art. 702, comment (d); Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073, 1079; Mitchell, 666 So.2d at 729.
The Fire Department contends that Dr. Hutchinson's testimony failed to meet the Daubert test because Dr. Hutchinson "could provide no verification in the form of scientific documentation, scientific studies, or even other medical cases, wherein it was stated that being employed as a fireman caused the problems for which Mr. Devall was treated." (Emphasis added). We disagree.
At the outset, we note that: Dr. Hutchinson, a board-certified cardiologist who examined Devall to provide a second opinion, candidly acknowledged that he was unaware of any medical studies or documentation directly focusing on the link between the occupation of firefighter and heart disease. However, Dr. Hutchinson explained that he was aware of the documented effects of exposure to smoke and certain toxic fumes and gases, such as carbon monoxide, as well as the effects of stress, on heart disease. Indeed, he testified in terms of these known and recognized risks when discussing Devall's career and its effect on his heart disease. Thus, the mere fact that Dr. Hutchinson did not rely on any studies specifically linking heart disease to firefighting as an occupation is of no moment. Instead, Dr. Hutchinson relied upon the specific duties and exposures and the stress related to that occupation and testified with regard to the known and accepted effects of these specific factors upon Devall's medical condition.
Accordingly, we cannot find any clear error or abuse of discretion in the decision of the workers' compensation judge to admit the testimony of Dr. Hutchinson. Dr. Hutchinson's testimony was clearly based on known medical risks of heart disease and the complications associated with stress and exposure to smoke and toxic fumes. This assignment of error is without merit.

DEVALL'S ENTITLEMENT TO BENEFITS

(Assignments of Error Nos. 1 & 2)
In these assignments of error, the Fire Department contends that the workers' compensation judge erred in rendering judgment in favor of Devall, where the evidence clearly established that no causal relationship existed between Devall's heart condition and his employment, and in finding that the evidence adduced by the Fire Department was inadequate to rebut the presumption in favor of Devall as established by the Heart and Lung Act.
By enacting the Heart and Lung Act, the legislature has acknowledged that firefighters, as a result of the stress and strain of their work, are predisposed to vascular diseases and heart problems. Coats v. City of Bossier City, 31,164 (La. App. 2nd Cir.10/30/98), 720 So.2d 1283, 1286, writ denied, 99-0019 (La.2/12/99), 738 So.2d 581. The Heart and Lung Act creates a presumption that the nature of a firefighter's work caused, contributed to, *504 accelerated, or aggravated his heart disease or infirmity if the heart problem manifested itself after the first five years of employment.[2] LSA-R.S. 33:2581; McCoy v. City of Shreveport Fire Department, 26,181 (La.App. 2nd Cir.1/25/95), 649 So.2d 103, 107.
Once a claimant establishes that a covered disease is at issue, and the presumption applies, the burden shifts to the employer to prove that the disease was not caused by the firefighter's employment.[3]Vallelungo, 673 So.2d at 1295. The claimant is not required to prove that the employment was the sole cause of the heart injury, so long as it is shown to be a contributing, accelerating, or aggravating factor. Rothell v. City of Shreveport, 626 So.2d 763, 766 (La.App. 2nd Cir.1993), writ denied, 93-3191 (La.2/11/94), 634 So.2d 379. Thus, to rebut the presumption, the employer must prove that the firefighter's employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to the heart condition. Arsenaux v. City of New Orleans, 98-1405 (La.App. 4th Cir. 12/23/98), 729 So.2d 1056, 1059.
Clearly, this shifting of the burden of proof imposes an onerous task upon the employer. Vincent v. City of New Orleans, 326 So.2d 401, 403 (La.App. 4th Cir. 1975), writ denied, 329 So.2d 760 (La. 1976). In fact, because the employer is required to prove a negative, i.e., that the employment did not in any way precipitate, accelerate aggravate, or otherwise cause or contribute to the heart condition, some courts have termed this presumption as almost impossible to rebut. Rothell, 626 So.2d at 766; Vincent, 326 So.2d at 405 (on rehearing).
In the instant case, the parties do not dispute that Devall suffered from a heart disease or infirmity within the meaning of LSA-R.S. 33:2581. Thus, the presumption that his employment caused, contributed to, accelerated, or aggravated his heart condition applied. The burden then shifted to the Fire Department to rebut that presumption. In attempting to rebut the presumption, the Fire Department cites the testimony of Dr. Joseph Deumite, Devall's treating cardiologist. When asked whether he could say to a medical certainty that Devall's work as a firefighter had a relationship to his heart problems, Dr. Deumite responded:
I am not aware of any independent risk factor that a fireman has as to contributing to heart disease, I am not aware of any. And I could be educated on that, but I am not aware of that.
When then asked if he was of the opinion that Devall's heart condition was not related *505 to his work, Dr. Deumite again acknowledged that he was "not aware of any occupational hazard specifically contributing to coronary artery disease," but again qualified his answer by stating that "I can be educated on that and I'm very open to it." When asked this question a second time, Dr. Deumite responded:
I can answer that question as simply as this, that if you go and open up a standard textbook of cardiology and go to the risk factors for coronary artery disease, I'm not aware that there is any specific occupation that is listed . . . I don't know that that is a contributing factor. (Emphasis added).
Thus, given his lack of knowledge of any studies or medical textbook specifically relating the occupation of firefighter to increased risk of coronary artery disease, Dr. Deumite could not say that Devall's heart problems were specifically related to being a firefighter.
Nonetheless, Dr. Deumite did acknowledge that stress "contributes" to heart disease. While further acknowledging that Devall had had several elevated blood pressure recordings, he stated that he did not know whether Devall's blood pressure was higher on the job. However, Dr. Deumite then conceded that if Devall's work was very stressful for him, such stress could contribute or aggravate his heart condition. He further admitted that he could not rule out that stress related to Devall's job as a firefighter had "some contribution" to Devall's heart problems.
As stated above, because the record establishes that Devall suffered from a heart disease or infirmity within the meaning of LSA-R.S. 33:2581, the Fire Department had the "almost impossible" burden of proving that Devall's employment as a firefighter did not in any way precipitate, accelerate, aggravate, or otherwise cause or contribute to his heart condition. Rothell, 626 So.2d at 766; Vincent, 326 So.2d at 405 (on rehearing). Based upon our review of Dr. Deumite's testimony in its entirety, we cannot conclude that the workers' compensation judge committed manifest error in finding that Devall was entitled to benefits under the Heart and Lung Act. As noted by the Second Circuit Court of Appeal in McCoy, a medical opinion that generally negates that the firefighter's work was the cause of his heart disability, but which is tempered by acknowledgements, agreements, or concessions that the work may have been a cause or contributing factor, even though remote, is simply insufficient to rebut the statutory presumption that the heart infirmity resulted from the firefighter's work. McCoy, 649 So.2d at 108.
Moreover, the testimony of Dr. Hutchinson, who examined Devall to provide a second opinion, also supports the workers' compensation judge's factual determinations that Devall's heart condition was work related and, that he accordingly was entitled to workers' compensation benefits. Specifically, Dr. Hutchinson explained that a patient's exposure to carbon monoxide or smoke can result in a drop in the oxygen concentration in the patient's bloodstream, which can "potentially lead to worsening of [his] heart condition." Dr. Hutchinson further testified that, given the potential compounds present in toxic fumes to which firefighters are exposed, such exposure could have been involved in accelerating thickening of the endothelia, which leads to hardening of the arteries.
Dr. Hutchinson testified that Devall's ongoing exposure to the adverse conditions required by his work would be stressful and that stress constitutes a "clear cut risk" for heart disease. As confirmed in discussions with Devall, Dr. Hutchinson noted that as a firefighter, Devall had been subjected to physical stress, in terms of *506 the intensity of the physical effort involved, stress on the body caused by lower oxygen levels as discussed above, and psychological stress associated with trying to save lives and property as quickly as possible.[4] Thus, Dr. Hutchinson opined that the stress associated with working as a firefighter "definitely . . . would be a contributing factor" after reviewing Devall's activities on his job and comparing his other risk factors.
Thus, Dr. Hutchinson concluded, despite the lack of any studies directly focusing on the link between firefighting as an occupation and heart disease, based on the conditions of the job as related by Devall and the known risks associated with these exposures and stresses, "it seemingly would be impossible to refute that there couldn't be some contributing factor" affecting Devall's heart condition.
Considering the foregoing and recognizing the onerous burden imposed by statute upon the employee herein, we are unable to say, after a review of the entire record, that the workers' compensation judge erred in finding that Devall's employment as a firefighter precipitated, accelerated, aggravated, or otherwise caused or contributed to his heart condition. There simply was no evidence presented that was sufficient to overcome the presumption that Devall's heart infirmity resulted from his work as a firefighter. See McCoy, 649 So.2d at 108. Accordingly, we find no merit to the Fire Department's remaining two assignments of error.

CONCLUSION
For the above and foregoing reasons, the October 24, 2006 judgment of the Office of Workers' Compensation Administration, District 6, is affirmed. Costs of this appeal are assessed against the Baton Rouge Fire Department.
AFFIRMED.
NOTES
[1] Although Daubert specifically dealt with expert scientific testimony, the United States Supreme Court has since pronounced that the Daubert analysis is equally applicable to all expert testimony. Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999).
[2] Louisiana Revised Statute 33:2581 provides as follows:

Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
[3] While not specifically part of the Workers' Compensation Act, LSA-R.S. 23:1021, et seq., the Heart and Lung Act consistently has been applied to workers' compensation cases involving firefighters. Vallelungo v. City of New Orleans, 95-0264 (La.App. 4th Cir.5/1/96), 673 So.2d 1292, 1295.
[4] Lawrence Efferson, the chief of safety for the Fire Department, also testified with regard to the conditions to which firefighters bad been exposed on the job during the past thirty years. He noted that in the 1970s, many firefighters with the Fire Department fought fires without any respiratory protection, thus exposing those firefighters to cyanides, fire gases, carbon monoxide, and many other toxins. He further stated that all firefighters with the Fire Department were not provided with or encouraged to use a selfcontained breathing apparatus until the late 1970s. Devall, who had been a firefighter for 28 years, similarly testified about the limited respiratory equipment available when he first started his career. Moreover, both Efferson and Devall testified as to the high levels of stress associated with the job.