STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0440

MICHAEL THOMPSON

VERSUS

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. and
TRANSOCEAN DEEPWATER, INC.

Judgment Rendered: ___**FEB 2 1 2020**___

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 650292

Honorable R. Michael Caldwell, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Kenneth A. Doggett, Jr.<br>Alexandria, LA | Counsel for Plaintiff/Appellant<br>Michael Thompson |
| Charles A. Mouton<br>Richard J. Hymel<br>Lafayette, LA | Counsel for Defendant/Appellee<br>Transocean Offshore Deepwater<br>Drilling, Inc. & Transocean<br>Deepwater, Inc. |
| Jere Jay Bice<br>Lake Charles, LA | Counsel for Intervenor/Appellee<br>Jere Jay Bice |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1]Honorable William J. Burris, retired, is serving as judge *pro tempore* by special
appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.**

Plaintiff, Michael Thompson, ("Thompson"), appeals a judgment rendered in accordance with an adverse jury verdict, dismissing all of his claims against Transocean Offshore Deepwater Drilling, Inc. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 25, 2014, Thompson was employed by Transocean Offshore Deepwater Drilling, Inc. (Transocean) as a chief electronic technician and crew member on board the vessel, the Polar Pioneer. At the time, the Polar Pioneer was located in Singapore, being retrofitted and renovated for its next venture in Alaska. Prior to setting off for Alaska, Transocean conducted "bundle training" and "team-building activities" over a multi-day period. After day-time training was complete, Thompson, along with other Polar Pioneer crew members who were so inclined, were transported to a local resort and waterpark, known as the Wave House Sentosa, where food, beverages, and recreational water activities, such as the Double Lane FlowRider, were provided by Transocean for the crew's enjoyment. While there, Thompson decided to ride the Double Lane FlowRider, which is a simulated wave-surfing water ride.[2] On the fourth time Thompson rode the FlowRider, he fell, purportedly sustaining injuries to his neck and back.

As a result of the incident, Thompson filed a petition for damages against Transocean and Transocean Deepwater, Inc.,[3] alleging that he was injured while in the course and scope of his employment through the negligence of defendants, and sought damages as a result for his alleged injuries.

---

[2]Prior to riding the FlowRider, each participant, including Thompson, was required to fill out and sign an indemnity form.

[3]Transocean Deepwater, Inc. was subsequently dismissed without prejudice from this suit.

Following a multi-day trial, the jury returned a verdict finding that although Thompson was injured in the course of his employment with Transocean, Transocean was not negligent in causing his accident. On October 10, 2018, the district court signed a judgment in favor of Transocean and against Thompson, dismissing with prejudice "all claims that were or could have been asserted" by Thompson in the litigation. After the denial of his motion for new trial, Thompson filed the instant appeal, challenging: evidentiary rulings of the district court; the grant of a directed verdict dismissing his claim regarding a lower back injury; the jury's finding that Transocean was not negligent in causing the incident that occurred on October 25, 2014; and the jury's failure to award him damages for his injuries as well as past and future wage losses.

## DISCUSSION

### Evidentiary Challenges

### (Assignments of Error Numbers One, Two, and Three)

In these assignments, Thompson contends that the district court made various erroneous evidentiary rulings. If a trial court commits evidentiary error that interdicts its fact-finding process, this court must conduct a *de novo* review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Spann v. Gerry Lane Enterprises, 2016-0793 (La. App. 1st Cir. 8/24/18), 256 So. 3d 1016, 1022, writ denied, 2018-1584 (La. 12/3/18), 257 So. 3d 194.

Thompson contends the district court committed legal error in: (1) hearing Transocean's untimely filed Daubert motion in contravention of the deadlines set forth in LSA-C.C.P. art. 1425(f); (2) granting Transocean's Daubert motion, excluding the expert testimony of Captain Bret Gilliam; and (3) denying Thompson's motion in limine seeking to exclude evidence of his receipt of long term disability benefits.

3

Louisiana Code of Civil Procedure article 1425 provides in pertinent part, that:

> F. (1) Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. <u>The motion shall be filed not later than sixty days prior to trial</u> and shall set forth sufficient allegations showing the necessity for these determinations by the court.

> (2) <u>The court shall hold a contradictory hearing and shall rule on the motion not later than thirty days prior to the trial.</u> At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. For good cause shown, the court may allow live testimony at the contradictory hearing.

> (6) <u>Notwithstanding the time limitations in Subparagraphs (1), (2), and (3) of this Paragraph, by unanimous consent of the parties, and with approval by the court, a motion under this Paragraph may be filed, heard, and ruled upon by the court at any time prior to trial</u>... [Emphasis added].

In his first assignment of error, Thompson contends that the trial court erred in allowing the <u>Daubert</u> motion to be heard at all since it was not timely filed, and a contradictory hearing was not held, within the deadlines set forth in LSA-C.C.P. art. 1425(F)(1) and (2). At the outset, we note that subsection (6) of Art. 1425 clearly creates an exception to the imposed deadlines, so long as the parties, and the court, consent. On review, we find that all required parties did so consent. Although Thompson's attorney initially raised an objection as to the timeliness of the motion, he appeared to later waive that objection, as noted by the district court on the record on August 7, 2018:

> After the hearing yesterday on the motions in limine, I discussed with counsel the possibility of continuing this trial to the week in January for which it was originally set as a first setting before being moved up to this date to allow time for a full Daubert hearing on the qualifications of Captain Gilliam...Counsel for plaintiffs decided they did not want to do that. They instead wanted to try to present Captain Gilliam's testimony this morning on a motion or a hearing to

determine whether he would be allowed to testify, and we discussed that an adverse ruling and a request for writs would not delay the trial, that I would not issue a stay order if either side disagrees with my ruling and wants to apply for writs to the first circuit. So with all of that having been said, if counsel think I have misstated something or think something should be added or subtracted from what I've said, they may do so now.

Both Thompson's and Transocean's attorneys stated that they understood and agreed with the district court's recitation on the record as to the status of the matter and its procedural posture. Accordingly, we find no merit to this assignment of error as all parties consented to the hearing.

Thompson next contends that the district court erred in excluding the testimony and opinion of his expert witness, Captain Bret Gilliam. The standard for determining the admissibility of expert testimony was established by the United States Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and is now codified in LSA-C.E. art. 702 which provides in part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the produce of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

To ensure reliability, <u>Daubert</u> requires that the expert's opinions be grounded in methods and procedures of science, rather than subjective belief or unsupported speculation. Thus, before expert testimony is admitted, the court must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. <u>Daubert</u>,

5

509 U.S. at 589-93, 113 S. Ct. at 2795-97; <u>Devall v. Baton Rouge Fire Department</u>, 2007-0156 (La. App. 1st Cir. 11/2/07), 979 So. 2d 500, 502.

The following illustrative considerations may be used to determine whether the reasoning and methodology underlying expert testimony is scientifically valid and can properly be applied to the facts at issue: (1) whether the expert's theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. <u>Daubert</u>, 509 U.S. at 593-94, 113 S. Ct. at 2796-97.

However, the ultimate determination of the admissibility of expert testimony under LSA-C.C.P. art. 702 "turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue." <u>Chearis v. State ex rel. Department of Transportation and Development</u>, 2003-0680 (La. 12/3/03), 861 So. 2d 536, 541-542. The decision to admit or exclude expert testimony is within the sound discretion of the trial court, and its judgment will not be disturbed by an appellate court unless it is clearly erroneous. <u>Devall</u>, 979 So. 2d at 503.

After hearing testimony from Captain Gilliam, as well as argument of the parties, the district court concluded that although Captain Gilliam was an experienced maritime officer, his testimony was not scientifically reliable testimony in this matter, as his opinions were based on his subjective belief rather than the application of any scientific methodology. We agree. Captain Gilliam was called to testify regarding safety programs that he had designed and implemented for companies that hired him for that purpose, as well as to compare the training programs he had implemented to the one at issue, and to opine as to the safety and reasonableness of Transocean's programs. Notably, when asked whether his programs and guidelines had been peer reviewed or otherwise tested, Captain Gilliam answered in the negative. Moreover, Captain Gilliam candidly

6

acknowledged that there really are no industry standards or guidelines for such "team building" exercises and activities. In fact, in his deposition, Captain Gilliam described the standard for determining whether a training program was safe as being a matter of "common sense." Despite these deficiencies, Thompson nonetheless urged that Captain Gilliam should be allowed to testify and give his opinion of Transocean's safety manual and its directives, and to state how they were not followed at the event at Wave House Sentosa.

After careful review, we find no error or abuse of discretion by the trial court in excluding Captain Gilliam's opinion testimony. While we acknowledge Captain Gilliam's experience as a boat captain, we agree with the district court that although experienced, his expert opinion in this matter is neither reliable nor necessary for the jury to understand and evaluate the evidence as he readily admitted that there are no particular established guidelines for determining the safety of a team building activity, and as such a determination is a matter of "common sense." Thus, we also agree that his testimony was neither necessary nor helpful to the jury, as the jury was capable of interpreting Transocean's safety policies and procedures itself. See Howard v. Cal Dive International, Inc., (E.D. La. 1/6/11), 2011 WL 63873, *3. Accordingly, we find no clear error or abuse of discretion in the decision of the district court to exclude the testimony of Captain Gilliam. This assignment lacks merit.

The last evidentiary issue assigned as error by Thompson is the district court's failure to sustain his motion in limine to exclude evidence of his receipt of long term disability benefits. We note that initially, Thompson argued that this evidence was inadmissible because of the collateral source rule, but later changed his argument, contending instead that the information was more prejudicial than probative and should be excluded on that ground, citing LSA-C.E. art. 403.

Louisiana Code of Evidence article 403 provides in pertinent part, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Thompson contends that the evidence that he was receiving disability benefits clearly prejudiced him and misled and confused the jury, citing, Phillips v. Western Company of North America, 953 F. 2d 923 (5th Cir. 1992). We find Thompson's reliance on Phillips in support of his argument to be misplaced. Although the Phillips court did discuss the prejudicial effect of informing a jury of receipt of other compensation, including long term disability, the court held it was only reversible error because the district court had not determined, prior to allowing the evidence in, whether the long term disability benefits were a prohibited collateral source or otherwise relevant and admissible evidence. Id. at 933.

In the matter before us, the district court clearly made a ruling, outside of the jury's presence, that the long term disability benefits were not a collateral source, a ruling which Thompson did not challenge, arguing instead that the information was simply too prejudicial. Moreover, we find no error in the district court's decision to allow the evidence of long term disability benefits to be presented to the jury, as Thompson was asserting a claim for future lost wages, which, as recognized in Phillips, presents an acceptable reason to allow evidence of long term disability benefits, because of potential set off. Phillips at 934. Thus, we find this assignment of error also lacks merit.

Causation

(Assignment of Error Number Four)

In this assignment of error, Thompson challenges the jury's finding that Transocean was not negligent in causing the incident that occurred on October 25,

2015, given its actions of planning and transporting him to the Wave House Sentosa and offering the FlowRider wave surfing ride to him.

The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C. § 30104. The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. Foster v. Destin Trading Corporation, 96-0803 (La. 5/30/97), 700 So. 2d 199, 208. Such negligence may arise in many ways, including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. Zentner v. Seacor Marine, Inc., 2006-2049 (La. App. 1st Cir. 10/24/07), 977 So. 2d 962, 965. However, the duty of care owed by an employer under the Jones Act ultimately is that of ordinary prudence, namely, the duty to take reasonable care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F. 3d 331, 338 (5th Cir. 1997) (en banc). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. Foster, 700 So. 2d at 208. Moreover, a seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment, but also his own experience, training, or education. The reasonable person standard in a Jones Act negligence action becomes that of the reasonable seaman in like circumstances. Gautreaux, 107 F. 3d at 339 (overruling jurisprudence stating the seaman has only a slight duty of care to protect himself from the negligence of his employer and attributing to the employer a higher duty of care than that required under ordinary negligence.)

A seaman need only present "slight evidence" that his employer's negligence caused his injuries in order to reach the jury or to be sustained upon appellate review. Foster, 700 So. 2d at 208. Although the burden of proving

9

negligence and causation in a Jones Act case is a light one, the mere occurrence of an injury does not presuppose negligence. Meaux v. Carter Construction Company, 2013-2178 (La. App. 1st Cir. 9/19/14), 2014 WL 4669334, *2.

A jury's causation determination is a factual finding that should not be reversed on appeal absent manifest error. Detraz v. Lee, 2005-1263 (La. 1/17/07), 950 So. 2d 557, 561. Under the manifest error standard, the appellate court does not decide whether the jury was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr–McGee Rocky Mountain, LLC, 2014-2592 (La. 12/8/15), 193 So. 3d 1110, 1116. Reasonable persons frequently can and do disagree regarding causation in particular cases. But where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the jury's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Marie v. Allstate Insurance Company, 2016-1643 (La. App. 1st Cir. 6/14/17), 224 So. 3d 372, 376.

In the instant matter, the jury heard testimony from several witnesses, and received evidence regarding the team building activity at the Wave House Sentosa, including the requirement, or lack thereof, that crew members of the Polar Pioneer participate in riding the FlowRider. Kirkley Burrows, Transocean's Senior Safety Manager, as well as Sam Beverland, the Rig Manager of the Polar Pioneer, both testified as to planning the bundle training, and stated that the evening portion of the bundle training or "team building" activity at Wave House Sentosa was completely voluntary. Moreover, both men testified that employees who did not

want to participate in the activity, or who did not want to ride the FlowRider, were not penalized in any way, and those who did attend or ride the FlowRider were not given any extra compensation or reward. Both men further testified that less than half of the employees who went to Wave House Sentosa actually attempted to ride the FlowRider.

Although Thompson testified that he felt pressure to ride the FlowRider, he acknowledged that the activity was voluntary. Thompson further testified that he had previously ridden a similar ride, and thought he knew what to expect. Thompson also testified that he rode the FlowRider a total of four times, falling off the ride each time, and that he did not think there was anything unsafe about the ride until he was injured.

Another Transocean employee, David Bishop, testified that he was offered a chance to ride the FlowRider, but declined because he was uninterested in the activity. He further testified that he did not feel he was being encouraged or pressured to ride the FlowRider.

The jury was also presented with the power point slide which initially introduced the team building activity to Transocean's employees at the conclusion of the day-time bundle training. Regarding the event, the slide specifically noted "[w]ave riding will be available, *should you be interested* please note the following" and further instructions were provided. (Emphasis added).

After careful consideration of the record before us, we find no manifest error in the jury's finding that Transocean, in providing its employees with the option to ride the FlowRider, did not cause the accident, nor did it force employees to do so as a condition of employment. As the record reflects, Thompson elected to participate and rode the FlowRider four times, until he injured himself. Thus, this assignment of error also lacks merit.

Since we agree with and find no error in the jury's finding that Transocean did not cause the incident that occurred on October 24, 2014, we pretermit discussion of Thompson's remaining assignments of error.

## CONCLUSION

For the above and foregoing reasons, we affirm the October 10, 2018 judgment in favor of Transocean Offshore Deepwater Drilling, Inc. and against Michael Thompson, dismissing all of Thompson's claims against Transocean with prejudice. Costs of this appeal are assessed against appellant, Michael Thompson.

**AFFIRMED.**