STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0859

CRAIG R. SHORT

VERSUS

RACETRAC PETROLEUM, INC. INDIVIDUALLY AND D/B/A
RACETRAC JOHN DOE, DEF INSURANCE COMPANY, JOHN DOE,
INC. AND DEF INSURANCE COMPANY

*Judgment Rendered:* **FEB 2 4 2023**

********

Appealed from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2016-12077

The Honorable Vincent J. Lobello, Judge Presiding

********

| | |
|---|---|
| Michael C. Ginart, Jr.<br>Joyce D. Young<br>Nicholas N. S. Cusimano<br>John C. Ginart<br>Chalmette, Louisiana | Counsel for Plaintiff/Appellant<br>Craig Short |
| Troy L. Bell<br>Quentin F. Urquhart, Jr.<br>Elizabeth R. R. Showalter<br>New Orleans, Louisiana | Counsel for Defendant/Appellee<br>RaceTrac Petroleum, Inc. |
| Charles J. Duhe, Jr.<br>Sarah M. Kalis<br>New Orleans, Louisiana | Counsel for Defendant/Appellee<br>Tri-State Parking Lot Maintenance, LLC |

********

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

*[handwritten: Welch, J. concurs in part and dissents in part and assigns reasons.]*

**LANIER, J.**

In this personal injury action, the district court granted the defendants' motions to exclude the testimony and report of plaintiff's expert based upon the failure to meet the admissibility standards set forth in **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and La. Code Evid. art. 702, and further found that, absent the excluded testimony, the defendants were entitled to summary judgment. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts of this case are largely undisputed. It arises from a slip and fall that occurred on June 29, 2015, at the RaceTrac Petroleum, Inc. convenience store ("RaceTrac") located in Covington, Louisiana. On that date, plaintiff, Craig Short, had just finished pumping gasoline into his vehicle, when he and his son proceeded to walk towards the store to get snacks. Although it had been raining "very hard" earlier in the morning, it had slowed to a "light drizzle" by the time they decided to walk to the store from the pumps. As Mr. Short and his son walked toward the store, Mr. Short slipped and fell when he stepped on the painted surface of the handicap parking space directly in front of the doors. When Mr. Short was asked during his deposition whether he knew what caused him to slip, he replied "[t]he ground was wet." He denied seeing any other substances on the ground such as wet paint, oil, or any chemical substances.

On May 19, 2016, Mr. Short filed a petition for damages against RaceTrac, John Doe, John Doe, Inc., and DEF Insurance Company, seeking damages for his injuries. Mr. Short alleged he sustained personal injuries to his right hip and right shoulder, as well as multiple contusions and other painful and personal injuries as a result of his fall. He further asserted, among other things, that RaceTrac created an inherently dangerous condition by failing to use a non-slip paint and/or paint

2

additive in the handicap parking area and that RaceTrac failed to property remedy the defect when it knew or should have known of the condition. RaceTrac filed an answer, generally denying the allegations of the petition, and filed a Notice of Removal to federal court.

Mr. Short subsequently filed a first supplemental and amending petition in federal court naming Samantha Pritchett and Janiqua Jackson, employees of RaceTrac, and Tri-State Parking Lot Maintenance, LLC ("Tri-State"). Mr. Short alleged that Pritchett and Jackson were responsible for the contracting for the painting and maintenance of the handicap parking space and further that Tri-State had painted and/or applied the handicap stripes and signage to the area in question. Mr. Short also filed a "Motion to Remand for Lack of Federal Court Jurisdiction." On December 6, 2017, the matter was remanded to state court for further proceedings.

RaceTrac and Tri-State each responded by filing motions for summary judgment. In opposition, Mr. Short submitted, among other documents, the resume and affidavit of his expert, James Danner, a civil engineer who opined that "[a]t a minimum, the painted walkway should have an abrasive additive as recommended in the Sherwin-Williams data sheet, cross cut grooving, texturing or other appropriate means to render the surface slip resistant." Both motions were initially denied in a judgment signed September 12, 2019. Following additional discovery, including the deposition of Mr. Danner, Tri-State filed a **Daubert** motion to exclude Mr. Danner's testimony and report, and re-urged its motion for summary judgment. Likewise, RaceTrac filed a motion in *limine* to exclude Mr. Danner's testimony and also re-urged its motion for summary judgment. In seeking to exclude Mr. Danner's testimony, defendants argued: (1) Mr. Danner's opinions were not supported by any codes or standards; (2) the slip resistance standard relied upon by Mr. Danner was not adopted by Louisiana; (3) the measurements

3

obtained by Mr. Danner through testing were unreliable because they were not performed under the same conditions present when Mr. Short allegedly fell; (4) Mr. Danner did not know exactly where Mr. Short fell; (5) Mr. Danner's conclusions were unsupported by his testing results; (6) Mr. Danner relied on inaccurate and minimal facts to draw his conclusions; and (7) Mr. Danner's methodology was unreliable.

After a hearing on defendants' motions, the district court took the matter under advisement. On March 30, 2022, the court issued written reasons for judgment, granting all of the motions before it and dismissing Mr. Short's claims against RaceTrac and Tri-State. The court signed a judgment in accordance with its findings on April 18, 2022, dismissing, with prejudice, Mr. Short's claims against RaceTrac and Tri-State. This appeal by Mr. Short followed, wherein he alleges the district court erred in excluding Mr. Danner's testimony and in granting the motions for summary judgment filed by RaceTrac and Tri-State.

## LAW AND ANALYSIS

### *Daubert Motion/Motion in Limine*

In his first assignment of error, Mr. Short alleges that the district court erred by excluding all of Mr. Danner's testimony. While acknowledging that the test Mr. Danner performed "may not be relevant or reliable" in his case, Mr. Short argues that Mr. Danner's "technical, specialized knowledge and experience will help the trier of fact to understand the evidence and determine a fact in issue."

The standard for determining the admissibility of expert testimony was established by the United States Supreme Court in **Daubert**, and is now codified in La. Code Evid. art. 702, which provides, in part:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

4

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

To ensure reliability, **Daubert** requires that the expert's opinions be grounded in methods and procedures of science, rather than subjective belief or unsupported speculation. Thus, before expert testimony is admitted, the court must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. **Daubert**, 509 U.S. at 589-593, 113 S.Ct. at 2795-2797; **Devall v. Baton Rouge Fire Dept.**, 2007-0156 (La. App. 1 Cir. 11/2/07), 979 So.2d 500, 502.

The following illustrative considerations may be used to determine whether the reasoning and methodology underlying expert testimony is scientifically valid and can properly be applied to the facts at issue: (1) whether the expert's theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. **Daubert**, 509 U.S. at 593-594, 113 S. Ct. at 2796-2797.

However, the ultimate determination of the admissibility of expert testimony under Article 702 "turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue." **Cheairs v. State ex rel. Department of Transp. and Development**, 2003-0680 (La. 12/3/03), 861 So.2d 536, 541-542. The decision to admit or exclude expert testimony is within the sound discretion of the district court, and its judgment will not be disturbed by an appellate court unless it is clearly erroneous. **Devall**, 979 So.2d at 503.

5

On appeal, Mr. Short concedes that the testing done in this case by Mr. Danner was not designed for use on wet surfaces and that the ground was in fact wet when Mr. Short slipped. Although Mr. Short acknowledges that Mr. Danner's testing may not be relevant or reliable to this case, he asserts that Mr. Danner's technical, specialized knowledge and experience with respect to pedestrian/walkway safety is relevant and will help the trier of fact better understand the evidence. Mr. Short points to Mr. Danner's membership in ASTM F13–Pedestrian/Walkway Safety and Footwear ("ASTM Committee"). Mr. Short argues that Mr. Danner should have been allowed to testify regarding the static coefficient of friction and how paint additives affect same. He notes that Mr. Danner can educate the jury concerning the data sheet of the paint used and explain the safety precautions contained therein.

With regard to Mr. Danner's membership on the ASTM Committee, Mr. Danner stated that the committee is made up of about eight subcommittees. He is on the Walkway and Safety subcommittee and the Traction subcommittee. Mr. Danner testified that he considers himself an expert on walkway surfaces.

According to the record evidence, Mr. Danner's inspections of the accident site took place approximately one year after Mr. Short's fall. In fact, during his site visit, Mr. Danner was actually performing testing in connection with another incident that had occurred at the RaceTrac in August 2016. Mr. Danner never performed a site inspection or testing in direct response to Mr. Short's fall. As part of his testing, Mr. Danner randomly tested six areas of the painted symbol in which Mr. Short had reportedly fallen using a Whiteley Slipmaster Horizontal Pull Slipmeter. A series of eight tests were made in the six test areas, four were taken in the direction of travel and four were taken perpendicular to that direction.

Mr. Danner testified that he used the Whiteley Slipmaster Horizontal Pull Slipmeter and that the area was "tested in accordance with equipment and protocol

detailed in ASTM F 609-05 (Reapproved 2013), "*Standard Test Method Using a Horizontal Pull Slipmeter (HPS)*"." Mr. Danner explained that the Whiteley Slipmaster is used to determine the coefficient of friction, which in turn is used to determine the slip resistance of a surface. He acknowledged, however, that the protocol for the Whiteley Slipmaster was "only valid for doing dry static tests." Mr. Danner further added that he was not aware of any Louisiana statute or regulation "that defines slip resistance as a level of the dry static coefficient of friction." Mr. Danner indicated that he did not know the exact location of where Mr. Short fell, but that he had a "general idea." Mr. Danner noted in his report that "the exact location where Mr. Short stepped was not tested and the coefficient of friction at that spot cannot be confirmed."

Mr. Danner was also asked about standards and codes he reviewed in connection with this case. He referred to the "National Fire Protection Association Life Safety Code 100- 2009 Edition; Article 7.1.6.4 Means of Egress, Walking Surfaces," noting that it had been adopted in the fire marshal's law "quite a few years ago."[1] Concerning the ASTM standard he reviewed, "ASTM International F1637-10; Standard Practice of Safe Walking Surfaces, Walkway Surfaces; Article 5.1.3," Mr. Danner acknowledged that this standard had not been adopted by any Louisiana statute or regulation.[2]

Concerning the results of his testing, Mr. Danner found that five of the six areas tested were "slip resistant" and one was "marginally slip resistant." Despite

---

[1] This code provides, "Walking surfaces shall be slip resistant under foreseeable conditions. The walking surface of each element in the means of egress shall be uniformly slip resistant along the natural path of travel."

[2] This ASTM standard provides, "Walkway surfaces shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable." Even Mr. Danner admitted in his deposition testimony that while using "abrasive additive, cross cut grooving, texturing or other appropriate means" may make a surface more slip resistant when it is wet, slip and fall accidents could still occur under some circumstances.

7

these findings, Mr. Danner concluded that "[b]ased on the [surveillance] video and testing, the walkway surface of the painted parking space where Mr. Short slipped was likely not slip resistant when wet." When asked what led him to the conclusion that the area where Mr. Short slipped was likely not slip resistant, Mr. Danner replied, "Essentially because he did slip and fall." He continued noting that he made similar findings in other cases where there was traffic paint used without an additive to make the paint slip resistant. Mr. Danner concluded in his report as follows:

> Based on the layout of the islands and the store doorway, it is reasonable and foreseeable that a pedestrian would take a direct route from the fuel islands to and from the store entrances when the marked accessible parking space in front of the door is vacant. As such, that area would be better used as a dedicated pedestrian walkway from the islands to the store without large area of painted concrete in its center. At a minimum, the painted walkway should have an abrasive additive as recommended in the Sherwin-Williams data sheet, cross cut grooving, texturing, or other appropriate means to render the surface slip resistant as wet conditions at this location are to be expected. It is apparent that none of these modifications were done.

After considering Mr. Danner's deposition testimony and report, as well as argument of the parties, the district court excluded Mr. Danner from testifying or offering any opinion in the case and further ruled that Mr. Danner's expert report was inadmissible. After careful review, we find no error or abuse of discretion by the district court in excluding Mr. Danner's testimony and expert report. While we acknowledge Mr. Danner's experience as a civil engineer, we agree with the district court that his testimony and report are inadmissible in this matter. Mr. Danner's opinions are not based on sufficient facts or data; his opinions are neither reliable nor the product of reliable principles and methods; and Mr. Danner has not reasonably applied the principles and methods to the facts of this specific case as required by **Daubert** and Article 702. We further agree that there is no evidence in the record that Mr. Danner is qualified to testify as an expert regarding whether

8

additives should have been added to the paint used in the area where Mr. Short fell. This assignment of error lacks merit.

### *SUMMARY JUDGMENT*

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). In reviewing a district court's ruling on a motion for summary judgment, appellate courts review evidence *de novo* using the same criteria that govern the district court's determination of whether summary judgment is appropriate. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1 Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194.

The Code of Civil Procedure places the initial burden of proof on the party filing the motion for summary judgment. See La. Code Civ. P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover need only point out to the court, through its supporting documents, the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1). Once the motion for summary judgment has been properly supported by the moving party, *i.e.*, the mover has established the material facts through its supporting documents and the mover has made a prima facie showing that the motion should be granted, the burden then shifts to the non-moving party to produce factual support, through the use of supporting documents in opposition to the motion, of the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). See also La. Code Civ. P. art. 966, Comments—2015, Comment (j). If the non-moving

9

party fails to produce sufficient factual support in its opposition that proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40 (per curiam); **Jenkins v. Hernandez**, 2019-0874 (La. App. 1 Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

In ruling on a motion for summary judgment, the district court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So.3d at 22.

As to Mr. Short's claims against RaceTrac, the applicable substantive law is found in La. R.S. 9:2800.6, which provides, in pertinent part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

In order to prove that a merchant is liable for damages sustained as a result of a fall due to a condition that existed in or on the merchant's premises, a plaintiff must prove by a preponderance of the evidence, through direct or circumstantial evidence: (1) the existence of a condition that presented an unreasonable risk of harm that was reasonably foreseeable; (2) the merchant's actual or constructive notice of the condition; and (3) the merchant's failure to exercise reasonable care. **Williams v. Liberty Mutual Fire Insurance Company**, 2016-0996 (La. App. 1 Cir. 3/13/17), 217 So.3d 421, 424, writ denied, 2017-0624 (La. 6/5/17), 219 So.3d 338. Failure to prove any one of the foregoing requirements is fatal to a plaintiff's case. *Id.*

A merchant owes a duty to persons using his premises to exercise reasonable care to keep such premises in a reasonably safe condition. La. R.S. 9:2800.6(A). The absence of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant. **Williams,** 217 So.3d at 424 (citing **Oster v. Department of Transp. and Development, State of La.,** 582 So.2d 1285, 1288 (La. 1991)). A hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances. **Pena v. Delchamps, Inc.,** 2006-0364 (La. App. 1 Cir. 3/28/07), 960 So.2d 988, 991, writ denied, 2007-0875 (La. 6/22/07), 959 So.2d 498. However, merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury. **Primeaux v. Best Western Plus Houma Inn,** 2018-0841 (La. App. 1 Cir. 2/28/19), 274 So.3d 20, 28. Accordingly, a merchant is not absolutely liable every time an accident happens. **Williams,** 217 So.3d at 424.

As previously noted, Mr. Short indicated that he did not see anything on the ground at the time of his fall other than rainwater. When asked what caused him to fall, Mr. Short stated, "[t]he ground was wet." Although Mr. Short points to the surveillance videos in an effort to prove causation, a review of the videos merely

11

reveals the general location of Mr. Short's fall, not what actually caused the fall. Moreover, there is video evidence showing several other patrons of RaceTrac traversing the same area, without incident, just after Mr. Short's fall. As noted by the district court, Mr. Short presented no evidence to "substantiate that the cause of [his] fall was anything other than a surface wet from rain, *i.e.*, an open and obvious condition."

We agree with the district court that the record is void of any competent summary judgment evidence to prove that the area where Mr. Short fell presented an unreasonable risk of harm. Mr. Short's inability to satisfy this essential element of La. R.S. 9:2800.6(B) is fatal to his claim against RaceTrac. Accordingly, summary judgment in favor of RaceTrac was appropriate.

Similarly, we find that summary judgment in favor of Tri-State was properly granted. Mr. Short's claim against Tri-State was based on negligence. Mr. Short alleged that Tri-State failed to use the proper paint and/or a paint additive when painting the handicap parking area so as not to create an inherently dangerous condition. To defeat the motion for summary judgment filed by Tri-State, Mr. Short was required to come forward with specific facts showing a genuine issue for trial. See La. Code Civ. P. arts. 966 (D)(1) and 967(B).

Tri-State was the company hired by RaceTrac to restripe the parking lot approximately three months prior to Mr. Short's slip and fall. However, Mr. Short could not meet his burden on the summary judgment without submitting factual support to show that the area where he fell had a condition that created an unreasonable risk of harm and that the unreasonably dangerous condition was the cause-in-fact of his injuries.

Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles as set forth in the Civil Code. See La. Civ. Code art. 2315; **Brewer v. J.B. Hunt Transport, Inc.,** 2009-

12

1408 (La. 3/16/10), 35 So.3d 230, 240. In order for liability to attach under the duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiffs injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). **Landers v. USIC Locating Services, Inc.**, 2020-0890 (La. App. 1 Cir. 4/26/21), 324 So.3d 1070, 1073. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Id.* The plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. **Lewis v. Safeway Insurance Company of Louisiana**, 2020-0999 (La. App. 1 Cir. 4/16/21), 324 So.3d 121, 126, citing **Hanks v. Entergy Corp.**, 2006-477 (La. 12/18/06), 944 So.2d 564, 578.

As support for his argument that Tri-State was negligent in failing to use the proper paint and/or paint additive when painting the RaceTrac parking lot, Mr. Short points to the "Safety Precautions" found in the Sherwin-Williams data sheet for the Pro-Park Waterborne Traffic Marking Paint, B97 Series ("Pro-Park"), which provide as follows:

> Refer to the Safety Data Sheets ... before use. FOR PROFESSIONAL USE ONLY. Published technical data and instructions are subject to change without notice. Contact your Sherwin-Williams representative for additional technical data and instructions. Painted surfaces can become slippery when wet. Zone Marking paints are not intended for use as floor paints, and should not be used to paint large areas subject to pedestrian traffic. For instance, painting an entire traffic stall is not recommended. Slip Resistance-Some surfaces may require a slip resistance additive for safety. Add H&G SharkGrip Slip Resistant Additive to the final coat applied following label directions. Sand may also be broadcast onto the wet

13

paint or incorporated in the final coat. Those additives should not be used in place of a non-skid finish.

According to the deposition testimony of David Hurst, the owner of Tri-State, RaceTrac sent Tri-State a work order for the work to be done at the Covington location. The work was described as "OUTSIDE BUILDING/Parking Lot/Parking Spaces/Needs Painting/Please stripe parking lot." Mr. Hurst stated that Pro-Park paint is used by his company for all parking lot jobs. He indicated that Pro-Park is a paint used specifically for parking lots and that nothing has to be added to the paint prior to use. Mr. Hurst further testified that Pro-Park paint is used by his company because it is "the best [he] could buy." When asked if Pro-Park paint is "industry standard" or "top of the line paint" for painting parking lot spaces, Mr. Hurst replied, "This is my industry standard, top of the line paint. I can buy paint for $10 a gallon. I pay 20-something dollars a gallon to have the best paint to put on a parking lot because I deal in repeat business."

Based on our thorough review of the record, we find no evidence to support Mr. Short's claim that the handicap parking area where he fell required a paint additive. The mere allegation that "[s]ome surfaces may require a slip resistance additive for safety," is not sufficient to defeat summary judgment. Mr. Short has failed to meet his burden of proving, by a preponderance of the evidence, any negligence on the part of Tri-State. Thus, we find no error in the district court's judgment granting summary judgment in favor of Tri-State.

## DECREE

For the above and foregoing reasons, we affirm the district court's April 18, 2022 judgment and assess all costs associated with this appeal against plaintiff/appellant, Craig Short.

**AFFIRMED.**

14

CRAIG R. SHORT

VERSUS

RACETRAC PETROLEUM, INC.
INDIVIDUALLY AND D/B/A RACETRAC
JOHN DOE, DEF INSURANCE COMPANY
JOHN DOE, INC. AND DEF INSURANCE
COMPANY

NUMBER: 2022 CA 0859

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

WELCH, J., concurring in part and dissenting in part.

I respectfully concur in part and dissent in part from the majority opinion in this matter. First and foremost, on the motion *in limine*/**Daubert** motion, I believe that the trial court abused its discretion in granting the motions and in excluding the expert testimony and report of Mr. Danner, a civil engineer. Notably, the defendants neither proved nor presented any evidence—expert or otherwise—to establish that Mr. Danner's methods or opinions in this case were unreliable. See **Robertson v. Doug Ashy Bldg. Materials, Inc.**, 2010-1552 (La. App. 1st Cir. 10/4/11), 77 So.3d 339, 359, writs denied, 2011-2433, 2011-2432 (La. 1/13/12), 77 So.3d 973, 974 (on a defendant's motion to exclude plaintiff's expert's opinion on causation under **Daubert**, the defendant must prove that the expert's opinion is unreliable). Instead, the defendants relied on Mr. Danner's testimony itself and the video surveillance footage and argued that Mr. Danner's opinions were not reliable or supported. Although the defendants utilized the necessary "buzzwords" in making their argument, they failed to set forth any actual proof of their arguments. Essentially, all of the objections that the defendants had with respect to Mr. Danner's testimony did not concern the validity of his methodology, but rather, went to the weight of the evidence, which does not bring **Daubert** into play. See **MSOF Corporation v. Exxon Corporation**, 2004-0988 (La. App. 1st Cir. 12/22/05), 934 So.2d 708, 718, writ denied, 2006-1669 (La. 10/6/06), 938 So.2d

78. Based on my review of Mr. Danner's testimony, there was a sufficient and reliable basis for his opinions and conclusions based on the Sherwin-Williams data sheet that Mr. Danner utilized and the video surveillance footage, which he viewed and depicted the area where the plaintiff fell. It is well-settled that an expert may provide testimony based on information obtained from others, and the character of the evidence upon which an expert bases an opinion affects only the weight to be afforded the expert's conclusions—not its admissibility under **Daubert**. See **MSOF Corporation**, 934 So.2d at 718. Furthermore, I believe that Mr. Danner's specialized knowledge and experience with respect to pedestrian/walkway safety and surfaces is relevant and will help the trier of fact understand the evidence. Therefore, I would reverse those portions of the judgment of the trial court granting the motion *in* limine/**Daubert** motion and excluding the expert testimony and/or expert report of Mr. Danner.

When the expert opinion of Mr. Danner that was wrongfully excluded by the trial court is considered in reviewing the defendants' motions for summary judgment, the plaintiff met his burden of producing factual support sufficient to establish the existence of a genuine issue of material fact as to whether the failure to use an abrasive additive to the paint that was used in a reasonably foreseeable pedestrian walkway, where wet conditions are expected, presented an unreasonable risk of harm and that risk of harm was reasonably foreseeable.

With respect to Racetrac, however, there was a lack of evidence establishing a genuine issue of material fact that it either created or had actual or constructive notice of that condition; therefore, summary judgment in favor of Racetrac, dismissing the plaintiff's claims, was proper, and I agree that portion of the judgment should be affirmed. On the other hand, as to Tri-State, based on my Mr. Danner's expert report and testimony, as well as the testimony of Mr. Hurst, there are genuine issues of material fact as to whether Tri-State created an unreasonable

risk of harm and caused the plaintiffs injuries when it failed to comply with the slip prevention directions set forth in the Sherwin-Williams data sheet. Therefore, summary judgment as to Tri-State was improper and I would reverse that portion of the judgment of the trial court.

Thus, I respectfully concur in part and dissent in part.